O'BARR et al. v. TURNER et al. (7 Div. 407.)

(Court of Appeals of Alabama. April 3, 1917. Rehearing Denied May 15, 1917.)

1. BILLS AND NOTES ⬳134—CONSTRUCTION—ASSIGNMENT OF SECURITY.

Where an account was assigned as security for present and future advances and separate notes given for the advances, each referring to the assignment, and with a copy thereof attached, each note and the assignment would be construed together.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 325-329½.]

2. PLEDGES ⬳44 — PAYMENT OF DEBT — EFFECT.

Where collateral was pledged to secure notes, the payment of the notes released the collateral, and pledgor was at liberty to repledge it.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 103-107.]

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

16 ALA.APP.—5

3. FRAUDS, STATUTE OF ⊜~~119(1)—PURPOSE.
The purpose of the statute of frauds is to prevent fraud and perjury.

[Ed. Note.—For other cases. see Frauds, Statute of, Cent. Dig. §§ 113, 265–267.]

4. FRAUDS, STATUTE OF ⊜~~118(1) — SUFFICIENCY OF WRITING—SEPARATE WRITING.
Where a contract may be gathered from writings, executed in the same transaction, but not contemporaneously, the writings may be construed together to prevent the contract being invalidated by the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 262.]

5. FRAUDS, STATUTE OF ⊜~~118(2) — SUFFICIENCY OF WRITINGS—LOAN OF MONEY.
Where copies of an assignment securing present and future advances were attached to notes given for such advances and the notes themselves referred to the assignment, the notes and assignment, construed together, *held* to comply with the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 263.]

6. GARNISHMENT ⊜~~108—PROPERTY SUBJECT TO ASSIGNMENT BY DEBTOR.
Where the debtor has assigned an account, a garnisheeing creditor cannot subject it to payment of his debt until the assignee's debt has been fully paid, since the garnisheeing creditor has no greater rights against the assignee than defendant debtor.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 220–226.]

7. GARNISHMENT ⊜~~51 — ACTION — SPLITTING CAUSES OF ACTION.
The rule against splitting causes of action applies only where the holder sues more than once on a single cause, or, without defendant's consent, assigns part only of such cause of action, and is inapplicable to the garnishment of an account previously assigned by defendant debtor.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 74, 97–101.]

Appeal from Circuit Court, St. Clair County; J. E. Blackwood, Judge.

Action by G. E. O'Barr and others against P. W. Turner and others, the Mitchell Mountain Coal & Iron Company, garnishee, the American Trust & Savings Bank, assignee, claimant. Judgment for claimant, and plaintiffs appeal. Affirmed.

This is the second appeal in this case. See American Trust & Savings Bank v. O'Barr, 12 Ala. App. 546, 67 South. 794. As the facts presented in this record are in some respects different from what they were in the first appeal, for the purpose of disposing of the questions now presented we restate them.

Appellant sued out an attachment against Turner, which was executed by summoning the Mitchell Mountain Coal & Iron Company as garnishee. The garnishee answered, admitting an indebtedness to Turner of $2,705.99, and in its answer suggested that it had been notified that the indebtedness had been transferred to the American Trust & Savings Bank. In response to citation, the bank propounded its claim, asserting that it claimed such fund—

"by reason of, and on account of, a certain sale, transfer, and assignment made by P. W. Turner on, to wit, August 26, 1912, by the terms whereof said Turner assigned, set over, and conveyed unto the said American Trust & Savings Bank all moneys then due or that might thereafter become due and payable to the said P. W. Turner under that certain contract executed on or about August 14, 1912, by and between the said Mitchell Mountain Coal & Iron Company and the said P. W. Turner for work done or to be done by said P. W. Turner for said Mitchell Mountain Coal & Iron Company, at or near Coal City, Ala."

There is no dispute that Turner became indebted to the plaintiff about April, 1913, for which he recovered judgment in this case; that the indebtedness disclosed by the answer of the garnishee was the balance due under a contract between the defendant and the garnishee made on August 22, 1912, whereby Turner agreed to construct "five miles of railroad commencing near Alverson's switch on Pell City branch, S. A. L. Ry., St. Clair county, Alabama, and extending to the mines of the Mitchell Mountain Coal and Iron Company on Coosa river," and the indebtedness due the plaintiff from Turner as represented by the judgment recovered was for labor performed in the construction of said railroad.

On August 26, 1912, the defendant Turner arranged with the claimant to advance him $800 as a loan to aid him in carrying out his contract with the garnishee, Turner giving his note for the sum so advanced, which contained the following clause:

"There has been deposited and pledged as collateral security for the payment of this note, or any other liability or liabilities of the undersigned, to the owner thereof, whether the same be now existing or hereafter contracted, now due or hereafter to become due, the following property, to wit: Assignment of amount Mitchell Mountain Coal & Iron Company of all moneys now due or that may hereafter become due from the Mitchell Mountain Coal & Iron Company agreement hereto attached."

At the time this note was given and as a part of the transaction, Turner executed and delivered to the bank the following assignment:

"State of Alabama, Jefferson County.

"For and in consideration of one dollar ($1.00) and other valuable and sufficient considerations, in hand paid, by the American Trust & Savings Bank, a corporation, to P. W. Turner, receipt of which is hereby acknowledged, the said P. W. Turner does hereby sell, transfer, assign and set over and convey unto the said American Trust & Savings Bank, all moneys now due, or that may hereafter become due and payable, to the said P. W. Turner under a certain contract executed on or about August 14, 1912, by and between the Mitchell Mountain Coal & Iron Company, of Atlanta, Georgia, and the said P. W. Turner, to which reference is hereby made, for work done by the said P. W. Turner for said Mitchell Mountain Coal & Iron Company, at or near Coal City, Alabama.

"It is further understood and agreed by the parties to this instrument that all retained percentages are also assigned, transferred, set over and conveyed unto the said American Trust & Savings Bank, and the said Mitchell Mountain Coal & Iron Company is hereby authorized and directed to pay any and all sums under said contract, when due, direct to the said bank, which is hereby fully authorized and empowered

to receive and receipt for said funds the same as if received by and receipted for by the undersigned.

"Witness my hand and seal this the 26th day of August, 1912. P. W. Turner.

"Witnesses:

"Eugene Fies,

"W. L. Wilson."

This note given for the $800 loan was paid, and subsequently the bank made other loans to Turner, as follows: September 13, 1912, $100; September 27, 1912, $700; October 14, 1912, $500; October 26, 1912, $1,500; November 22, 1912, $2,450; December 30, 1912, $2,200; January 30, 1913, $112.75; February 7, 1913, $1,212.75; February 24, 1913, $3,-000; March 7, 1913, $600; March 21, 1913, $600; April 30, 1913, $1,050. These advances were made upon the engineer's estimates of the work that had been done by Turner under the contract with the Mitchell Mountain Coal & Iron Company. As each advance was made a note representing this advance was taken, the same collateral agreement was placed in the note, as hereinabove quoted, and there was attached to the note the same transfer hereinabove set forth.

At the time of the garnishment all of these notes had been paid, and had been surrendered to Turner, with the exception of the note for $3,000, bearing date February 24, 1913; and the note for $1,050, bearing date April 30, 1913; and at this time the note for $3,000 had received credits of $1,-541.91, leaving a balance due of $1,450.09 on this note. Crediting the balance due from Turner on these two notes with the amount admitted by the garnishee in this suit as being due Turner, there remained to Turner's credit, after paying this indebtedness, the sum of $135.

Mr. Jefferson, as the representative of the bank, identified the assignment of August 26, 1912, and testified that it came into the custody of the bank on the day of its execution.

M. M. Smith, of Pell City, for appellants. Percy, Benners & Burr, of Birmingham, for appellees.

BROWN, J. [1] From the foregoing statement of facts taken from the record, it is clear that in each instance money was advanced by the claimant to the defendant; the defendant gave his note payable to the claimant for the amount advanced, containing a clause usual in notes where collaterals are pledged, referring to and describing the assignment in question, which was in each instance attached to the note when it was executed and delivered. In other words, each loan constituted a separate and distinct transaction, in which the note and assignment constituted the contract between the parties, under the well-established rule of law that where two or more written instruments are made a part of one transaction, they will be read and each will be construed with reference to the other. Kelly v. Life

Ins. Clearing Co., 113 Ala. 463, 21 South. 361; Pierce v. Tidwell, 81 Ala. 299, 2 South. 15; Robbins v. Webb, 68 Ala. 393; Prater v. Darby, 24 Ala. 496; Holman v. Crane, 16 Ala. 570; Sewell v. Henry, 9 Ala. 24; Whitehurst v. Boyd, 8 Ala. 375; Byrne v. Marshall, 44 Ala. 355; 6 Cyc. 580 (VIII, B. 6).

[2] The transaction between the claimant and the defendant being a mere loan of money, a pledge of collateral to secure the payment of the loan, in each instance as the several notes were paid the incumbrance on the thing pledged was removed, and the defendant was entitled to have it restored to his possession without demand therefor (Geron v. Geron, 15 Ala. 558, 50 Am. Dec. 143; Overstreet v. Nunn, 36 Ala. 649; Hancock v. Franklin Iron Co., 114 Mass. 155; 31 Cyc. 849–853); and hence was at liberty to repledge it.

[3-5] The purpose of the statute of frauds is to prevent frauds and perjury; and, while parol evidence is not admissible to take an agreement out of the statute of frauds, where the contract expressing the true intention of the parties may be gathered from contemporaneous writings or writings acquired by the holder in the same transaction, although not contemporaneously executed, the writings will be considered and construed together to save the contract from condemnation as fraudulent. Kyle v. Jordan, 187 Ala. 360, 65 South. 522; Oliver v. Alabama Gold Life Ins. Co., 82 Ala. 417, 2 South. 445; Forst et al. v. Leonard et al., 112 Ala. 296, 20 South. 587. For the reason above stated, the notes were admissible, and when the contract of the parties as gathered from the two writings—the note and the assignment referred to in the note and attached to it—is considered, it is evident that the assignment is not within the statute of frauds. Oliver v. Alabama Gold Life Ins. Co., supra.

[6] The transfer not being void under the statute of frauds, but valid, passing to the claimant the chose in action of the judgment defendant against the garnishee as collateral surety for its claim against the defendant, the plaintiff cannot subject the debt in question to his judgment until the claim of the bank is paid in full, not because a holding otherwise would impinge the rule against splitting causes of action, but because the plaintiff, under his garnishment, has no greater right to recover this money than has the defendant. Norwood & Co. v. Voorhees, Miller & Co., 129 Ala. 314, 29 South. 680; Henderson v. Ala. Gold Life Ins. Co., 72 Ala. 32; Coleman v. Hatcher, 77 Ala. 217.

The judgment defendant only has an equity in the chose transferred as collateral which he cannot assert until the debt due the bank secured by the collateral is paid.

[7] The rule against splitting up a single, indivisible cause of action is the offspring of two legal maxims: "It concerns the state that there be an end to lawsuits" ("Interest republicæ sit finis litium"); and, "No man

ought to be twice troubled or harassed (if it appear to the court that he is), for one and the same cause" ("Nemo debet bis vexari [si constet curiæ quod set] pro una et eadem causa"). U. S. v. Throckmorton, 98 U. S. 65, 25 L. Ed. 93; 1 Eng. Enc. Pl. & Pr. 148, 149; Black's Law Dictionary; 23 Cyc. 436. This rule is only applicable when the holder of the cause of action undertakes to sustain more than one suit by it, or assigns to another a part only of such entire cause of action, holding the remainder, and such assignee undertakes to maintain an action thereon without the consent of the party liable.

The case of K. C., M. & B. R. R. Co. v. Robertson, 109 Ala. 296, 19 South. 432, was in the latter class, and the following cases in the former: Lock v. Miller, 3 Stew. & P. 14; Oliver v. Holt, 11 Ala. 574, 46 Am. Dec. 228; De Sylva v. Henry, 3 Port. 132; S. & N. A. R. R. Co. v. Henlein & Barr, 56 Ala. 368; Liddell v. Chidester, 84 Ala. 508, 4 South. 426, 5 Am. St. Rep. 387; Wharton v. King, 69 Ala. 365.

The rule, in so far as it is for the protection of the state, is embodied in the doctrine of res adjudicata, as will appear from its application in the cases cited above, and the person liable can only assert the doctrine when sued the second time on the same cause of action by the holder, or when he has not given his assent to the assignment of a part of the cause of action and is sued by the assignee.

An analysis of the foregoing authorities in the light of the reason and purpose of the rule in question demonstrates beyond question that the holding of the majority on the former appeal (12 Ala. App. 546, 67 South. 794) is unsound, and is overruled.

What we have said necessitates an affirmance of the judgment of the trial court.

Affirmed.