[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 288 
Plaintiff, The Colonial Bank of Alabama (hereinafter Colonial), appeals from the order of the Circuit Court of Mobile County granting summary judgment in favor of defendants-appellees, Stephen D. Coker and Insurors of Mobile, Inc.
The issue to be decided on appeal is whether the trial court erred by granting the defendants' summary judgment motion. We affirm the grant of summary judgment in favor of Insurors of Mobile, Inc., but reverse the grant of summary judgment as to Coker.
This cause arose from the following facts:
Prior to March 1981, Steven Coker was a shareholder and vice-president of Insurance Concepts, Inc., d/b/a The Insurance Center, located in Birmingham, Alabama. On February 20, 1981, Insurance Concepts, through Coker, contracted with Lady Diane, Inc., to sell a policy of insurance covering a fishing trawler owned by Lady Diane, Inc.
The Lady Diane insurance contract, which also contained a promissory note and security agreement, reflected an unpaid balance of $18,647.86 on the price of the insurance policy. The reverse side of the combined contract, note, and security agreement document contained a form for assignments to City National Bank of Birmingham (now Colonial Bank of Alabama). On February 26, 1981, Insurance Concepts executed an assignment of the Lady Diane insurance contract to Colonial.
In a letter dated February 27, 1981, Colonial informed The Insurance Center that Colonial would "accept the (Lady Diane) contract . . . only on the condition that the first time it is over 30 days delinquent, your firm guarantees to pay the loan off within 15 days of our demand." The letter went on to state "should this be acceptable, then, please sign the attached copy and return to me and upon my receipt of your acknowledgment, the contract will be processed." Coker placed his signature on the letter without qualification and acknowledged the guarantee letter and returned a copy to Colonial as requested.
Colonial accepted the Lady Diane insurance contract assignment. Upon acceptance of the contract, Colonial deposited $16,162.51 into The Insurance Center's account at the bank on March 6, 1981, and applied the remaining $2,485.35 to pay "another loan of Lady Diane, Inc." Although it is clear that the funds advanced by the bank were to finance the premium due on the insurance contract, it is disputed by the parties whether the loan of the premium from the bank was to Lady Diane, Inc., or to Insurance Concepts. *Page 289 
In addition to the February 27th guaranty executed by Coker, Coker on December 10, 1980, had executed a pre-printed guaranty agreement drafted by Colonial which obligated Coker to personally guarantee indebtedness of Insurance Concepts owed to Colonial.
Sometime in March 1981, Coker allegedly severed his association with Insurance Concepts, and became the sole shareholder of Insurors of Mobile. Originally, Insurors of Mobile was incorporated by Insurance Concepts, with Insurance Concepts owning 51 per cent of Insurors of Mobile, and Coker owning the remaining 49 per cent. Apparently, Coker purchased the interest of Insurance Concepts in March 1981, to become the sole owner of Insurors of Mobile.
Lady Diane, Inc., defaulted on its payments on the note financing the premiums for the insurance policy, and Colonial made demand upon Coker and Insurors of Mobile to pay off the Lady Diane loan pursuant to the 1981 guaranty agreement. Coker refused to satisfy the balance owing on the note, and Colonial brought suit against Coker and Insurors of Mobile to recover the outstanding indebtedness. After learning of the existence of the 1980 guaranty agreement through discovery, Colonial asserted that Coker and Insurors of Mobile were liable by virtue of the 1980 and 1981 guaranty agreements. Upon discovery that United States Central Underwriters Agency of Alabama, Inc., had agreed to purchase the assets of Insurors of Mobile, Colonial amended its complaint to add United States Central as a party defendant.
On November 5, 1984, after considering the briefs and arguments of counsel, along with the evidence before the court, the trial judge granted Coker's and Insurors of Mobile's motion for summary judgment. Colonial's Rule 59, A.R.Civ.P., motion to vacate the judgment was denied by operation of law pursuant to Rule 59.1, Ala.R.Civ.P., whereupon Colonial appealed to this Court.
The issue to be resolved on appeal is whether Colonial produced a scintilla of evidence giving rise to a genuine issue of material fact as to whether Coker and Insurors of Mobile are liable for the outstanding indebtedness arising from the Lady Diane, Inc., insurance contract by virtue of the 1980 and 1981 guaranty agreements executed by Coker. We are of the opinion that the trial court correctly granted summary judgment for Insurors of Mobile, but erred in granting summary judgment for Coker.
There is a material issue of fact presented by the evidence before us as to whether the guaranty agreement executed by Coker on December 10, 1980, made him personally liable for the indebtedness owed to Colonial as a result of the Lady Diane contract. The portion of the 1980 guaranty agreement in dispute reads as follows:
GUARANTY AGREEMENT
 WHEREAS Insurance Concepts, Inc. hereinafter referred to as the debtor, is indebted to, or has applied for a loan, or extension of loan to be made by City National Bank of Birmingham, hereinafter referred to as the Bank, which debt, loan or extension, is evidenced by note or notes of the debtor now held by the Bank, or executed to the Bank contemporaneously herewith.
 In addition to said indebtedness, the debtor has applied to the Bank for a line of credit. It is agreed that future advances on said line of credit shall be evidenced by notes on form now in general use by the Bank executed by the debtor to the Bank, and this guaranty agreement shall cover all such loans or advances made in the future, as well as said note or notes first above described. It is also agreed that all indebtedness of the debtor arising out of rediscounts or out of endorsement liability, shall be covered hereby and included in the indebtedness guaranteed hereby. It is the intention and agreement of the undersigned that this guaranty shall cover and guarantee payment of all such loans, advances, rediscounts, endorsement liability and other indebtedness at any time owing by the debtor to the Bank. The term "the indebtedness" or "said *Page 290 
indebtedness" as hereinafter used shall be taken to refer to all such future loans or advances made to the debtor by the Bank, as well as any and all rediscounts, endorsement liability and other indebtedness at any time owing by the debtor to the Bank. This guaranty agreement is made in order to induce the Bank to advance to the debtor part or all of the credit evidenced by said note or notes of the debtor held by the Bank, as well as all of such line of credit which the Bank may hereafter advance to the debtor. All of said loans, notes, and advances made on said line of credit are hereinafter referred to as "the indebtedness" or as "said indebtedness."
 This guaranty agreement shall remain in full force and effect until terminated in writing signed and delivered by the undersigned and acknowledged by the Bank, and even after any such termination, shall be and remain effective as to obligations of the debtor then outstanding incurred as a part of said line of credit. This guaranty shall not be construed as having become terminated by payment in full of the debtor's obligations to the Bank, if, thereafter, in the absence of written termination by the undersigned, the debtor obtains new loans or advances from the Bank. . . .
 WHEREAS, the Bank has agreed to make said loan or loans, or increase or extend the same, (as the case may be) above referred to, provided the undersigned will execute this guaranty agreement, which the undersigned has or have agreed to do.
 NOW, THEREFORE, in consideration of the premises, and in order to carry out the agreement of the undersigned to execute this guaranty as an inducement to the Bank to make said loan, or loans, or increase or extend the same, (as the case may be) or to grant said line of credit and of other valuable considerations, the undersigned does or do hereby unconditionally guarantee the payment to the Bank, its successors and assigns, of said indebtedness.
 The undersigned hereby further agrees (or if more than one, the undersigned jointly and severally agree) to pay said indebtedness and interest upon demand at any time after maturity thereof, or any part thereof, or of any renewal of same. . . .
Although Coker denies having signed the agreement, his signature appears at the bottom of the document.
If Coker in fact executed the above contract of guaranty, then Coker undertook unconditionally to pay the debt of Insurance Concepts if Insurance Concepts, as principal, did not. The document is an absolute guarantee. Huckaby v. McConnon Co., 213 Ala. 631, 105 So. 886 (1925). Because it is an absolute guarantee, Colonial, as creditor, may pursue its remedy against Insurance Concepts, as principal, or Coker, as guarantor, at Colonial's option. Ehl v. J.R. Watkins MedicalCo., 216 Ala. 69, 112 So. 426 (1927).
However, Coker asserts that, as a matter of law, the 1980 guaranty agreement does not obligate him to repay the disputed indebtedness. Coker correctly points out that "a guarantor is bound only to the extent and in the manner stated in the contract of guarantee." Pate v. Merchants Nat. Bank of Mobile,428 So.2d 37, 39 (Ala. 1983) (quoting Furst v. Shows, 215 Ala. 133,137, 110 So. 299, 302 (1926)).
Coker contends that the guaranty agreement, by its terms, only guarantees loans made by Colonial directly to Insurance Concepts and does not guarantee secondary indebtedness of Insurance Concepts, such as that which arose from the 1981 guarantee of the Lady Diane contract. Whether Coker's guarantee of 1980 was broad enough to include indebtedness of Insurance Concepts arising from the enforcement of a subsequent guarantee of Insurance Concepts is a matter of contract construction. As noted in Pate, supra,
 It is generally recognized that the rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty *Page 291 
contract. 38 Am.Jur.2d Guaranty § 70 (1968).
428 So.2d at 39. Thus, the issue becomes whether the language in the agreement, which states "It is the intention and agreement of the undersigned that this guaranty shall cover and guarantee payment of all such loans, advances, rediscounts, endorsement liability and other indebtedness at any time owing by the debtor to the Bank," is to include the debt at issue. Courts in other jurisdictions have addressed whether similar language in guaranty contracts includes the guaranty of a guarantee agreement, and the courts have decided the issue both ways. See e.g., International Multi-foods Corp. v. D M Feed Produce, Inc., 470 F. Supp. 654 (D.Neb. 1979); Harris Trust andSavings Bank v. Stephens, 97 Ill. App.3d 683, 52 Ill.Dec. 927,422 N.E.2d 1136 (1981); Empire Bank v. BAM Construction, Inc.,607 S.W.2d 227 (Mo.App. 1980) (debt guaranteed). ContraNational Bank of Commerce of Kansas City v. Rockefeller, 174 F. 22 (8th Cir. 1909); Rohn v. Weld County Bank, 155 Colo. 490,395 P.2d 1003 (1964); Trego Wakeeney State Bank v. Maier,214 Kan. 169, 519 P.2d 743 (1974) (debt not guaranteed).
In Alabama, when the terms of a contract are unambiguous, the contract's construction and legal effect become a question of law for the court, and when appropriate may be decided by summary judgment. Jehle-Slauson Construction Co. v. Hood-Rich,Architects and Consulting Engineers, 435 So.2d 716, 720 (Ala. 1983) (citations omitted). However, when the terms of a contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact for the jury. Hall v. Integon Life Ins. Co., 454 So.2d 1338 (Ala. 1984). Whether a contract is ambiguous is a question of law for the court. Hartford, supra.
We are of the opinion that the above language of the 1980 guaranty contract is ambiguous in that it is reasonably capable of being subject to more than one interpretation. We note that Coker reached this same conclusion in his brief in response to Colonial's motion to vacate the summary judgment. The issue of the intention of the parties with respect to the types of indebtedness to which the agreement would extend is subject to parol evidence, and, thus, the determination of this issue becomes a question of fact for the jury.
Coker's second argument is that the 1980 guaranty agreement is unenforceable because it is not supported by consideration. Coker relies upon Shur-Gain Feed Div. William Davies Co. v.Huntsville Production Credit Ass'n, 372 So.2d 1317, 1320
(Ala.Civ.App. 1979), wherein the Court of Civil Appeals observed:
 Contracts of guaranty must be supported by consideration. However, where such an agreement is made prior to or contemporaneous with the creditor's contract with the principal, and both agreements are part of the same transaction, consideration moving to the guarantor's principal is sufficient consideration to support the contract of guaranty as well. See, e.g., Scharnagel v. Furst, 215 Ala. 528, 112 So. 102
(1927).
Coker contends that because Colonial never loaned money to Insurance Concepts (the guarantor's principal), there was no "consideration moving to the guarantor's principal" and, therefore, no consideration for the 1980 contract of guaranty. Furthermore, Coker states that if the guaranty agreement is a "debt" of Insurance Concepts, that debt cannot be consideration for the 1980 guaranty agreement because the "debt" was not created by a loan from Colonial to Insurance Concepts. We disagree.
In Lefkovits v. First Nat. Bank of Gadsden, 152 Ala. 521,44 So. 613 (1907), the Court held that the creditor's promise to make additional future advances to the principal debtor was sufficient consideration to support the promise of payment by the guarantor. We think that the guaranty in the present case reflects a promise by Colonial to establish a line of credit and make future advances thereon. Moreover, there is evidence that Colonial had financed *Page 292 
numerous contracts for the purchase of insurance for customers of Insurance Concepts. This financing conferred a benefit upon Insurance Concepts sufficient to supply the necessary consideration.
In addition, there is evidence that Colonial had extended credit directly to Insurance Concepts, either prior to, or after, Coker's execution of the 1980 guaranty, and this would also sustain a finding of consideration for the agreement. The fact that the consideration for the guaranty agreement was given sometime prior to the Lady Diane assignment transaction is of no consequence because a continuing guaranty, such as in the present case, can include subsequent indebtedness without new consideration being given. Shur-Gain, supra.
Finally, Coker argues that there can be no personal liability for the disputed debt because Colonial failed to meet two conditions precedent necessary to occur before liability could attach. First, Coker recognizes that in the 1981 guaranty, Insurance Concepts "guarantees to pay the [Lady Diane] loan off within 15 days of [Colonial's] demand." Coker contends that since demand was made upon him and Insurors of Mobile, rather than Insurance Concepts, the condition precedent to Coker's payment of any debt of Insurance Concepts was not satisfied. We think that Colonial's demand upon Coker was valid if Coker's guarantee of 1980 is found by the jury to include liability for the Lady Diane debt. If, by the terms of the 1980 guaranty, Coker was obligated for this debt of Insurance Concepts, then Colonial was permitted to make demand upon Coker as the guarantor of the Insurance Concepts guaranty. Second, Coker asserts that if the balance due Colonial on the Lady Diane contract is a debt of Insurance Concepts, then he is not liable because the indebtedness is not evidenced "by notes on form now in general use by the bank," which he argues is the only form of indebtedness contemplated by the 1980 guaranty agreement and the only form of indebtedness for which he could be liable. We disagree. As previously discussed, if the 1980 guaranty agreement is construed to include all indebtedness of Insurance Concepts, then indebtedness other than that evidenced by a promissory note could be found by the jury to be guaranteed by the 1980 guaranty. This is another question of material fact to be decided by the jury.
We now turn our attention to the trial court's grant of summary judgment in favor of Insurors of Mobile. Insurors of Mobile asserts that summary judgment as to it was proper because there is no disputed material issue of fact as to whether Insurors of Mobile is not a successor corporation of Insurance Concepts, and, therefore, that Insurors of Mobile is entitled to judgment as a matter of law. We agree.
We note that Insurors of Mobile never directly guaranteed any indebtedness of Insurance Concepts and the only way Insurors of Mobile can be liable on the debt at issue is if it can be concluded that Insurors of Mobile is a successor corporation of Insurance Concepts. In Rivers v. Stihl, Inc., 434 So.2d 766,771 (Ala. 1983), we said:
 Liability of a successor corporation under corporation law is largely dependent on the form of the acquisition. When corporations merge, the successor remains liable for its predecessors' liabilities. Birmingham Trust National Bank v. State, 292 Ala. 335, 294 So.2d 153 (1974). This result is also obtained where, regardless of the denomination of the transaction by the parties, the acquisition constitutes a de facto merger. See Shannon v. Samuel Langston Co., 379 F. Supp. 797 (W.D.Mich. 1974). When, on the other hand, a corporation purchases the assets of another company the transferee is generally not liable unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a de facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor. 15 Fletcher, Cyclopedia Corporations § 7122 (Perm. ed. 1973); 19 Am.Jur.2d Corporations § 1546 (1965). *Page 293 
Colonial does not argue that Insurors of Mobile falls within the first three exceptions set out above, but does argue that Insurors of Mobile is merely a continuation of Insurance Concepts. Specifically, Colonial asserts the following grounds in support of its position: (1) Insurors of Mobile originally was a 51 per cent owner of Insurance Concepts, and Coker became the 100 per cent shareholder of Insurors of Mobile upon receiving the stock of Insurance Concepts in Insurors of Mobile; (2) Insurors of Mobile was an ongoing corporation; and (3) Insurors of Mobile received all of the contract rights and accounts of Insurance Concepts that had been obtained in the Mobile area. However, these grounds alone are not sufficient to support a finding of successor liability under the continuation exception.
In National Dairy Products Corp. v. Borden Co., 363 F. Supp. 978,980 (E.D.Wis. 1973), the court opined that under the continuation exception to transferee non-liability, "the test is not the continuation of the business operation but the continuation of the corporate entity." The court in Weaver v.Nash International, Inc., 562 F. Supp. 860, 863 (S.D. Iowa 1983), observed that "the traditional indicia of the `mere continuation' exception are a common identity of officers, directors and shareholders in the selling and purchasing corporations and the existence of only one corporation at the completion of the sale of assets."
Moreover, in Reed v. Armstrong Cork Co., 577 F. Supp. 246
(E.D.Ark. 1983), the court held the continuation exception inapplicable partly because the alleged successor purchased only a portion of the predecessor corporation and the predecessor corporation remained in operation after the sale of assets.
Assuming that the transfer of complete ownership of Insurors of Mobile to Coker is predicated on the sale of the assets of Insurance Concepts, then it is evident that this transaction does not fall within the continuation exception. Although there is a common identity of officers and shareholders between the two corporations, it is undisputed that the sale of assets was only the sale of a portion of the Insurance Concepts assets and that Insurance Concepts continued in existence as a separateentity for several months following the transfer. Based upon these facts contained within the record before us, we find there is no material issue of fact concerning the successor status of Insurors of Mobile, and Insurors of Mobile is entitled to judgment as a matter of law. Rule 56, Ala.R.Civ.P.
For all of the foregoing reasons, we affirm the summary judgment as to Insurors of Mobile, Inc., but reverse the summary judgment as to Coker.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR TRIAL.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.