The defendant, John C. Dill, appeals from a summary judgment entered in favor of the plaintiff, Billy Blakeney, d/b/a Blakeney Construction Company.
Dill Company, Inc., a plumbing contractor, purchased its materials on open account from Central Supply Company, Inc. The terms of the account provided that Dill Company would pay Central Supply interest at 1 1/2% per month on any unpaid balance and reasonable attorney fees incurred in the collection of any unpaid balance. On December 29, 1986, Dill Company owed Central Supply a balance of $102,804.29, and, at Central Supply's request, John C. Dill, president of Dill Company, executed a guaranty agreement with Central Supply, wherein he wrote:
 "Please accept my personal guarantee of payment on the Dill Company, Inc., account. Amounting to $102,804.29."
Earlier in 1986, Blakeney had contracted with the State of Alabama to perform a construction project at Partlow State School and Hospital; Blakeney was to provide all the materials for that contract. Blakeney subcontracted with Dill Company to provide plumbing materials and to install the plumbing system. Dill Company purchased the materials it used in the Partlow project on its account with Central Supply. Blakeney paid Dill Company a total of $62,481.41 for the materials used in installing the plumbing system. Money paid by Blakeney to Dill Company for materials purchased from Central Supply was to be paid to Central Supply in satisfaction of Dill Company's debts incurred in regard to the Partlow project. Instead, Dill Company applied the payments to its longest outstanding bills on its open account. Pursuant to his obligations under Ala. Code 1975, § 39-1-1, Blakeney paid Central Supply the $62,481.41 in November 1987. In return, Central Supply executed the following agreement:
 "To the extent of the payment made by Blakeney to Central Supply on this date, Blakeney is subrogated to the rights of Central Supply Company, Inc. against John C. Dill as evidenced by the letter agreement dated December 29, 1986, a copy of which is attached hereto. As evidence of this subrogation right Central Supply Company, Inc. hereby assigns without recourse the non-exclusive right for Blakeney to proceed against John C. Dill. It is however expressly agreed and understood that Central Supply Company, Inc. shall retain the right to collect from John C. Dill the remaining balance of the account of Dill Company, Inc. now known as JTC, Inc."
In December 1987, Central Supply sued Dill on his personal guaranty to collect the remaining balance owed it on the Dill Company account, $56,894.73, plus attorney fees and costs. In June 1988, Blakeney filed an action against Dill; counts one, two, and three alleged fraud; count four demanded that Dill pay $62,481.41, plus costs, on the personal guaranty. In January 1989, the trial court entered a consent judgment in favor of Central Supply and against Dill, in the amount of $60,000 plus costs if paid on or before May 8, 1989, or $75,000 plus costs if paid thereafter.[1] In the action brought by Blakeney, the parties settled as to the fraud claims, and the trial court granted Blakeney's motion for summary judgment on count four, awarding him the principal amount of $62,481.41, $15,899.37 in interest, and $11,757 in attorney fees. This appeal followed.
Dill first argues that a partial assignee to the rights of the assignor must join with the assignor to enforce the assignee's rights and that Blakeney's failure to intervene in Central Supply's action against Dill *Page 776 
bars Blakeney from relief because of the doctrine of res judicata, the rule against splitting a cause of action, and the principles of bar and/or merger.
Dill relies chiefly on Kansas City, Memphis Birmingham R.R.v. Robertson, 109 Ala. 296, 19 So. 432 (1895), in which an employer owed an employee for 21 1/2 days of work and the employee assigned part of that right to Robertson. There was no evidence that the employer consented to the assignment. This Court wrote:
 "It is well settled that a single contract, unless it is payable in installments, cannot be split up, without the consent of the debtor, and become the foundation of a plurality of suits. The debtor has a right to stand upon the singleness of his original contract, and decline any assignment by which it may be broken into fragments. In such case, it is no part of his contract that he shall be obliged to pay in fractions to any other persons. The assignment of a part of the entire debt in this instance by [the employee's] giving an order to [Robertson] on [the employer] for a part of what was due him on the entire account, without [the employer's] consent, and without its acceptance of the same, did not give or authorize this suit upon such assigned part by [Robertson], against the [employer]."
109 Ala. at 298-99, 19 So. at 433.
Dill also relies on O'Barr v. Turner, 16 Ala. App. 65,75 So. 271 (1917), in which the Court of Appeals discussed the rule against splitting a single cause of action, where part of a right has been assigned:
 "The rule, in so far as it is for the protection of the state, is embodied in the doctrine of res adjudicata . . . and the person liable can only assert the doctrine when sued the second time on the same cause of action by the holder, or when he has not given his assent to the assignment of a part of the cause of action and is sued by the assignee."
16 Ala. App. at 68, 75 So. at 274.
Blakeney relies on In re Fine Paper Litigation State ofWashington, 632 F.2d 1081 (3d Cir. 1980). In that antitrust action, a certified class of plaintiffs, which had agreed to a settlement with the defendants, executed an assignment of some of its antitrust claims to the State of Washington, which represented a class of plaintiffs denied certification. Washington attempted to opt out of the settlement agreement and to pursue its claims separately; the settling defendants objected on the ground that the assignments were invalid attempts to split a cause of action. The Court of Appeals, in holding that the partial assignment did not improperly fragment the claims, stated:
 "The splitting of a cause of action principle is important in the application of res judicata. That doctrine teaches that a valid judgment on the merits is a bar in another action between the same parties or privies not only in respect to matters that were actually offered to support the judgment but also as to every ground that might have been presented. 1B Moore's Federal Practice 0.410[2] (2d ed. 1974). The earlier judgment, however, must be invoked as an affirmative defense in the second action, see Fed.R.Civ.P. 8(c), and is waivable by the defendant. Moreover, to have res judicata effect the initial judgment must be on the merits.
 "Given these precepts, the settling defendants could not properly invoke the splitting of a cause of action theory to prevent Washington from opting out of the first suit. That plea was premature and, in addition, the judgment in the first suit would have been based on settlement rather than on the merits. Finally, we note that the settlement would have taken place after the defendants were aware of the assignments. When the obligor has notice of an assignment by the plaintiff — and the assignee is not joined — a judgment for or against the obligor will not bar a later suit by the assignee. Restatement (Second) of Judgments § 104 (Tent.Draft No. 3, 1976).
 "Although the theory of splitting a cause of action is somewhat analogous to the present situation, we think the sounder approach to this problem is to analyze *Page 777 
the relationship between the parties when a partial assignment of claims is outstanding. The general law applicable is in accord with that found in § 156 of the Restatement of Contracts. An assignment of a fractional part of a single and entire right against an obligor is operative as if the part had been a separate right. But unless the obligor has consented, the partial assignee may not maintain the original suit against the obligor unless all parties having the collective right to the entire claim are joined in the proceeding. See Restatement (Second) of Contracts § 158 (Tent. Draft No. 3, 1976); 4 A. Corbin, Contracts § 889 (1951). Thus, partial assignments are recognized, but the rights of the obligor to be free of successive and repeated suits growing out of the same basic facts are also protected by the prudent use of joinder rules.
 "If a suit is brought by either an assignor or partial assignee, the obligor has the option of requiring joinder of the necessary parties or resorting to interpleader. Fed.R.Civ.P. 19, 22; see Yorkshire Insurance Co. v. United States, 171 F.2d 374, 376 (3d Cir. 1948), aff'd sub nom. United States v. Aetna Casualty Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949)."
632 F.2d at 1090-91. Moreover, where the obligor has notice of an assignment, he may require joinder of the assignor and the assignee. Comment c, Restatement (Second) of Contracts § 326 (1981), states:
 "The obligee of a right cannot bring successive actions to enforce parts of it. The right is merged in a judgment enforcing it in part, and subsequent actions are barred. See Restatement, Second, Judgments § 24. But where the obligor has notice of an assignment, a judgment for or against the assignor does not bar a subsequent action by the assignee. See Restatement, Second, Judgments §§ 37, 55; compare § 338, infra. To protect the obligor against multiple actions in a case of partial assignment, therefore, the rule stated in § 326(2) entitles him to require joinder of all the obligees."
See also Rules 19 and 22, A.R.Civ.P.
We hold that the rule stated In re Fine Paper Litigation, supra, and in the Restatement (Second) of Contracts, applies when the obligor has notice of the partial assignment. We feel that this is the sounder approach, given the defendant's ability to join parties pursuant to Rules 19 and 22, A.R.Civ.P. In this case, Blakeney filed his action against Dill in June 1988, six months before the trial court entered a consent judgment in the action between Central Supply and Dill. Thus, Dill had notice of the partial assignment before final judgment was entered in the action concerning Central Supply, the assignor. In order to protect himself from defending successive suits or from double liability, Dill could have joined Central Supply and Blakeney in the first action. Because Dill had the opportunity to do so and did not, Blakeney's subsequent action against Dill is not barred by Central Supply's previous action.
Dill next contends that a fact question existed as to the extent of his liability under the guaranty agreement and that, therefore, the trial court erred in entering summary judgment for Blakeney. He maintains that the trial court must have concluded, as a matter of law, that the guaranty agreement obligated Dill to pay all sums payable on Dill Company's general account with Central Supply and that the amount stated in the agreement, $102,804.29, did not limit the amount payable to Central Supply and Blakeney. He argues that the guaranty agreement is ambiguous and that the determination of its meaning should be left to the jury.
It is generally recognized that the rules governing the construction and interpretation of contracts are applicable in interpreting or construing a guaranty contract. Colonial Bankof Alabama v. Coker, 482 So.2d 286 (Ala. 1985). In Alabama, when the terms of a contract are unambiguous, the construction of the contract and its legal effect become questions of law for the court, and when appropriate, may be *Page 778 
decided by summary judgment. Colonial Bank of Alabama v. Coker, supra; Jehle-Slauson Construction Co. v. Hood-Rich, Architects Consulting Engineers, 435 So.2d 716 (Ala. 1983). However, when the terms of a contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact for the jury. Colonial Bank of Alabama v. Coker, supra;Hall v. Integon Life Ins. Co., 454 So.2d 1338 (Ala. 1984). Whether a contract is ambiguous is a question of law for the court. Colonial Bank of Alabama v. Coker, supra. When the language in a guaranty contract is ambiguous and is susceptible of more than one meaning, it should be construed more strongly against the obligor. National Surety Co. v. Julian, 227 Ala. 472,150 So. 474 (1933); Sales Corp. v. United States Fidelity Guaranty Co., 215 Ala. 198, 110 So. 277 (1926).
We find that the language in the guaranty contract is ambiguous as to whether Dill's payment is limited to $102,804.29 and that it is susceptible of more than one interpretation. Thus, the determination of the true meaning of the contract is a question of fact for the jury.
Dill also contends that Blakeney was not entitled, as a matter of law, to recover attorney fees. He argues, first, that the personal guaranty given by Dill to Central Supply did not obligate him to pay attorney fees, and, second, that it is a fact question whether the assignment agreement granting Blakeney the right to proceed against Dill personally provides for attorney fees.
The agreement between Dill Company and Central Supply that enabled Dill Company to purchase supplies on credit provided that Dill Company would pay Central Supply's reasonable attorney fees incurred in the collection of any unpaid balance. Dill's personal guaranty provided that he would guarantee "payment on the Dill Company account." We determine that the personal guaranty is ambiguous as to whether it obligated Dill to pay attorney fees; therefore, it is a question of fact to be determined by the jury.
Dill also argues that the rights assigned to Blakeney by Central Supply did not, as a matter of law, include the right to recover attorney fees.
 "An assignment will, ordinarily, be interpreted or construed in accordance with the rules of construction governing contracts generally, the primary object being always to ascertain and carry out the intention of the parties."
6A C.J.S. Assignments § 72 (1975).
The assignment agreement states, in pertinent part:
 "To the extent of the payment made by Blakeney to Central Supply on this date, Blakeney is subrogated to the rights of Central Supply Company, Inc. against John C. Dill as evidenced by the letter agreement dated December 29, 1986. . . ."
Applying the rules of construction governing contracts, we find that the assignment agreement is ambiguous as to whether it grants Blakeney the right to proceed against Dill personally to recover attorney fees. Therefore, if the jury first determines that the personal guaranty obligated Dill to pay attorney fees, then the determination of this issue is a fact question for the jury.
Having found that the summary judgment entered in favor of Blakeney was inappropriate, we pretermit discussion of the issue concerning the proper interest rate to be applied in this case.
This judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.
[1] Dill states in his brief that he paid Central Supply on or before May 8, 1989; however, the record indicates that the judgment was paid on May 9, 1989. *Page 779