622 So.2d 304 (1993)
Gerald WOODRUFF and Jack Wallach
v.
LEIGHTON AVENUE OFFICE PLAZA, LTD., et al.
William J. DAVIS
v.
Julian W. JENKINS.
1911422, 1911517.
Supreme Court of Alabama.
April 30, 1993.
Rehearing Denied June 18, 1993.
*305 Cleophus Thomas, Jr., Anniston, for Gerald Woodruff and Jack Wallach.
Jack W. Torbert of Torbert and Torbert, P.A., Gadsden, for Leighton Avenue Office Plaza, Ltd. and Julian Jenkins.
Clarence L. McDorman of Yearout, Myers & Traylor, P.C., Birmingham, for appellee/cross-appellant William Davis.
James S. Hubbard, Anniston, and Thomas Reuben Bell, Sylacauga, for Ian C. Mac-Kenzie.
SHORES, Justice.
These are consolidated appeals from summary judgments in cases concerning a failed partnership venture in Calhoun County, Alabama, known as Leighton Avenue Office Plaza, Ltd. We affirm the partial summary judgment for the defendants against the plaintiffs; we reverse the summary judgment in favor of defendant Julian W. Jenkins against defendant William J. Davis on Davis's cross-claim.
Leighton Avenue Office Plaza, Ltd. ("Leighton"), was organized in October 1980 as a limited partnership to implement architect Julian W. Jenkins's plan to renovate a Victorian house in Anniston and convert it into an office complex. The sole general partner was Gulf General Corporation, an Alabama corporation, whose stockholders were Julian W. Jenkins, William J. Davis, and Ian MacKenzie. Once the Leighton partnership was formed, the property at 1419 Leighton Avenue, Anniston, Alabama, was acquired, and the principals set about finding investors to purchase limited partnership interests. Gerald G. Woodruff, Jr., and Jack S. Wallach paid $21,300 each and were sold limited partnership interests.
The venture was not successful; rental income was insufficient to pay expenses. MacKenzie, who had been a stockholder in Gulf General Corporation, endorsed and turned over his stock to the corporation as treasury stock on May 6, 1985. On December 31, 1985, Gulf General Corporation, Leighton's general partner, was dissolved by its shareholders, Davis and Jenkins. Davis then sold his limited partnership interest in Leighton to Jenkins on March 7, 1986, in exchange for a condominium development. Davis contends that Jenkins agreed to indemnify him against liability that he might incur in regard to Leighton.
On June 30, 1986, the assets of the Leighton partnership were sold. The deed was executed by Leighton Avenue Office Plaza, Ltd., a limited partnership; by Jenkins and Davis, listed as a general partners in the Leighton partnership; and by Mac-Kenzie, listed as a general partner, by and through his attorney in fact. The property was sold for $387,000, from which was deducted SouthTrust Bank's mortgage payoff of $349,783.40 and a tax proration of $1,878.91, giving a net due to the seller of $35,337.69. The net was used along with personal funds of Jenkins ($8,846) and Mac-Kenzie ($4,423) to liquidate the partnership's remaining debt to Central Bank.
On June 23, 1988, Woodruff and Wallach sued Leighton and Jenkins, Davis, and MacKenzie, seeking monetary damages. Davis filed a cross-claim against Jenkins, calling upon Jenkins to indemnify him in this lawsuit.
Woodruff and Wallach's complaint was amended several times, and, when the motions for summary judgment were filed, the claims were as follows: Count one *306 that the defendants had breached an agreement with the plaintiffs by disposing of the assets of the partnership without their consent; count twothat the defendants had transferred the assets of the partnership in violation of the limited partnership agreement and had breached a fiduciary duty to the plaintiffs; count threethat the defendants had represented to the plaintiffs that, upon payment of $21,300, the plaintiffs would become limited partners with the rights and privileges accorded such partners; four count that the certificate of limited partnership contained statements that were false in a material respect; and five count that the defendants had failed to amend the limited partnership agreement in the manner set out in Alabama Code 1975, § 10-9A-21.
The plaintiffs and the defendants moved for summary judgments, and Jenkins moved for a summary judgment on Davis's cross-claim. The trial judge entered a summary judgment on behalf of Leighton, Jenkins, Davis, and MacKenzie on all claims except the fraud claim (relating to the sale of the limited partnership interest) and entered a summary judgment for Jenkins on Davis's cross-claim for indemnity; these judgments were made final pursuant to Rule 54(b), A.R.Civ.P. The plaintiffs and Davis appeal.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala. 1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981). Rule 56 is read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala.Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). In order to defeat a properly supported motion for summary judgment, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Woodruff and Wallach contend that the trial court erred in entering the summary judgment on all their claims except the fraud claim. They rely upon § 6.1(i) of the "Limited Partnership Certificate and Agreement," which concerns the rights and duties of the general partner. Here, the agreement provides that the powers of the general partner include, but are not limited to, the power to:
"Make such elections under the tax laws of the United States ... as to the treatment of items of Limited Partnership income, gain, loss, deduction and credit, and as to all other relevant matters ... as it believes necessary or desirable; to sell, lease, trade, exchange or otherwise dispose of any portion of the Limited Partnership property upon ... such terms and conditions and for such considerations as the General Partner deems appropriate, provided that the General Partner shall not sell substantially all of the assets of the Limited Partnership without the consent of seventy-five percent (75%) of the then Limited Partnership interests of the Limited Partnership, signified in writing...."
However, the Limited Partnership Certificate and Agreement also provides in Article X, "Duration of Business: Dissolution," as follows:
"10.2 Unless continued as provided hereinafter in paragraph 10.4, the Limited Partnership shall be dissolved upon the occurrence of any of the following events:
"(a) the bankruptcy, insolvency, death, retirement, mental incompetency, or dissolution of the last remaining General Partner.
". . . .

*307 "10.5 In the event of dissolution and final termination ... the General Partner shall wind up the affairs of the Limited Partnership, and shall sell all or such portion of the remaining Limited Partnership assets as promptly as is consistent with obtaining the fair value thereof...."
The defendants argue that, while paragraph 6 may have applied while the partnership was a going concern, once Gulf General Corporation, the general partner, was dissolved, Article X took over and those provisions of the Certificate of Limited Partnership governing dissolution, along with the Alabama Business Corporation Act, controlled.
Section 10-9A-140, Alabama Code 1975, provides that a limited partnership is dissolved and its affairs shall be wound up upon the happening of events specified in the certificate of limited partnership or in the event of withdrawal of a general partner. When Gulf General Corporation, the general partner, was dissolved on December 31, 1985, the limited partnership was thereby dissolved under § 10.2. Once the partnership was dissolved under § 10.5, the general partner had a duty to wind up the affairs and "sell all or such portion of the remaining Limited Partnership assets as promptly as is consistent with obtaining the fair value thereof." Under § 10-9A-143, the creditors of the partnership were entitled to the first proceeds. When the proceeds were insufficient to pay the creditors, they looked to Jenkins and Mac-Kenzie, who personally paid the remaining debt.
Once the limited partnership was dissolved, it had to be liquidated. The limited partners had no authority to liquidate it.[1] This left only the representatives of the general partner to wind up the affairs of the partnership. § 10-9A-124, Ala.Code 1975; Universal C.I.T. Credit Corp. v. Phenix-Girard Bank, 254 Ala. 643, 49 So.2d 273 (1950). For that reason, the defendants' partial summary judgment is affirmed. The fraud count remains to be tried.
We consider finally Davis's cross-claim for indemnity, which is based upon an agreement that Jenkins signed on March 7, 1986. The agreement provides that Jenkins will indemnify Davis "from any and all liability he may incur arising out of the operation of Leighton Avenue Office Plaza Ltd., a limited partnership, after this date." Counsel for Davis contends that the trial court invaded the province of the jury in entering the summary judgment for Jenkins. "[W]hen the terms of a contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact for the jury." Dill v. Blakeney, 568 So.2d 774, 778 (Ala.1990). We agree that in the context of the facts of this case, the indemnity agreement is ambiguous. The summary judgment for Jenkins against Davis is due to be reversed and the cause remanded for proceedings consistent with this opinion.
1911422AFFIRMED.
1911517REVERSED and REMANDED.
HORNSBY, C.J., and HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., concurs in case 1911422 and dissents in case 1911517.
MADDOX, Justice (concurring in part; dissenting in part).
I concur in the affirmance of the summary judgment in case number 1911422. I must respectfully dissent from the reversal of the summary judgment in favor of Jenkins on Davis's indemnity claim in case number 1911517.
The pertinent paragraph of the indemnity agreement sued upon reads:
"I further agree to indemnity and hold harmless William J. Davis from any and all liability he may incur arising out of *308 the operation of Leighton Avenue Office Plaza Ltd., a limited partnership, after this date."
Davis, in his brief, argues that "[t]he Leighton Avenue property was the only asset of the limited partnership at the time of its dissolution," and that "[i]t would seem to be without question that one of the acts that Jenkins might perform in his operation of the property is to sell it." The word "operation" in the indemnity agreement, in my opinion, is not ambiguous, and I cannot agree with Davis that the parties intended the word to include selling the asset of the limited partnership. Giving that expanded definition to the word "operation" in the indemnity agreement, in my opinion, is not warranted; I think the trial judge correctly entered the summary judgment on Davis's claim. I must dissent on that point.
NOTES
[1] Section 7.3 of the Agreement of the parties provided: "No limited partner, as such, shall take part in the management of the business, transact any business for the Limited Partnership, or have the power to sign for or to bind the Limited Partnership to any agreement or document, said powers being vested solely and exclusively in the General Partner."