## PRATER'S ADM'R *vs.* DARBY.

1. In civil cases, no errors will be noticed which are not assigned.
2. An absolute bill of sale of slaves, and a bond executed contemporaneously by the vendee (to his vendor) conditioned that he shall emancipate them, must be considered together as forming but on agreement.
3. The owner of certain slaves, being about to remove with them to Illinois for the purpose of emancipating them, conveyed them by absolute bill of sale to another, and took from him at the same time a bond, conditioned that he should emancipate them when reasonable compensation had been made to him for his trouble and expenses with them : *Held*, that inasmuch as there was nothing on the face of the bond requiring the obligor to emancipate the slaves in this State, his undertaking was not void, but formed a sufficient consideration for the bill of sale.
4. The case of Trotter v. Blocker and Wife, 6 Porter 269, overruled, as to the principle stated in the first clause of the fifth head-note, which asserts that the constitutional delegation of authority to the Legislature "to pass laws to permit the owners of slaves to emancipate them," "*is equivalent to a positive inhibition of the right of the owner to emancipate them except only under such regulations as the Legislature may prescribe.*

ERROR to the Circuit Court of Lauderdale.

Tried before the Hon. THOMAS A. WALKER.

DETINUE for certain slaves, by the administrator of Martha Prater, deceased, against Drucilla Darby. The pleas were, the general issue and the statute of limitations. It is unnecessary to notice the other pleadings, as they have no connection with the errors assigned, which only relate to the matters shown by the bill of exceptions.

" The evidence showed, that on the 14th of January, 1826, in Lauderdale County, Alabama, and at the same time and place, the plaintiff's intestate, Martha Prater, and one Richard Darby, respectively executed and delivered the following instruments :

" STATE OF ALABAMA,    Received of Richard Darby five Lauderdale County.   hundred and twenty-five dollars, in notes, for a negro woman named Rachel, about twenty-five years of age, and her three children, Eliza, about eight years of age, William, about five years of age, Thomas, about three years of age ; the right and title of said negroes sold, warranted and de-

fended forever, against myself, my heirs, executors, administrators, and all other persons whatsoever. Witness my hand and seal, January 14th, 1826.

Test. JOSEPH PHILLIPS,
THOMAS M. PHILLIPS.

MARTHA ⋈ PRATER."
her
mark

" Know all men by these presents, that I, Richard Darby, of the State of Alabama, and County of Lauderdale, am held and firmly bound, in the penal sum of one thousand and fifty dollars, well and truly to be made to Martha Prater. I bind my heirs, executors, administrators and assigns, firmly by these presents. Sealed with seal, and dated this 14th of January, 1826.

"The condition of the above obligation is such, that if the above bound Richard Darby doth liberate and set free a certain negro woman, named Rachel, and her children, when a reasonable compensation is made to the above bound Darby for his trouble and expenses that the said Darby is at with the above named negro woman and her children, then the above obligation to be void ; otherwise, to remain in full force and virtue.

Signed, sealed, and delivered in presence of us, the day and date above written. ⟩ RICHARD DARBY. [Seal.]

Test. JOSEPH PHILLIPS,
THOS. M. PHILLIPS.

" The proof showed, also, that the negroes mentioned in said bond and bill of sale, who then, and for a long time prior thereto, had belonged to Martha Prater, were then delivered to said Richard Darby, and continued in his possession until he died in December, 1834; that the negroes sued for are the negroes named in said bond and bill of sale, and are in the possession of the defendant, who obtained them through the will of said Richard Darby," which contains the following clause in relation to them : "And I give her (his wife Drucilla) my three negroes, viz., Lige, William and Tom, to labor for her support and the benefit of my children ; and I also give her my crop on hand ; all of said several bequeaths and gifts to be held and enjoyed by her during her natural life, and after her death an equal division to be made of all that she leaves among all my children." * * "And it is my desire that each of my negro boys, viz., Lige, William and Tom, be emancipated at the age of twenty-eight years ; to be effected in that manner which my executors can justifiably and lawfully do."

"There was evidence, also, tending to show that, at the time and place when and where said instruments were executed, and after their execution, a twenty dollar Bank note was handed by said Richard Darby to Martha Prater, for which she handed over, and delivered up to him, his promissory note to her for about $500. There was evidence, also, though not clear and conclusive, that the said twenty dollar note was, in fact, Mrs. Prater's own money, and not the property of said Darby. The proof showed, that Mrs. Prater, prior to said 14th of January, 1826, and at that time, owned a number of slaves; that she had entertained a fixed and frequently expressed purpose of emancipating them; that, at the time said contracts above specified were made, she was on the eve of leaving this State for Illinois, with the view, and for the purpose, of effecting her design to emancipate them; that said woman Rachel had, at that time, a husband in this county, who belonged to some other person residing here; that Mrs. Prater left for Illinois on said 14th of January, 1826, and remained there until her death in 1834; that no administration was granted on her estate, in this State, until 1844; that said Richard Darby died in this county, in December, 1834. There was proof tending to show declarations, made by said Darby long subsequent to the date of said contracts, to the effect that he intended to free said negroes, and to carry out his contract with Mrs. Prater in good faith. There was, also, evidence tending to show that, according to the cotemporaneous understanding and agreement of the parties, the said Darby was to be compensated for his trouble and expense in raising and freeing said slaves by their services."

"The court charged the jury as follows: If the jury believe from the proof that Martha Prater was of sound mind, and voluntarily made, executed and delivered the negroes and bill of sale read in evidence to Richard Darby, and under this sale and contract said Darby held the uninterrupted possession of said negroes, from January 14, 1826, to 1834, the year when both Martha Prater and said Darby died, then plaintiff, as administrator of Martha Prater, cannot recover in this action, notwithstanding said Darby did execute said bond at the same time, by which he obligated himself to set the negroes free according to the terms of said bond. The court stated to the jury, before

and at the time this charge was given, that the same was given with reference to, and in view of, all the facts occurring at the time said instruments were executed, including the evidence in relation to the payment of money, the taking of a note, &c.; and plaintiff thereupon excepted to said charge."

"The plaintiff then requested the court to charge, that, if said bond and bill of sale were executed at the same time and place, they constitute but one contract; and if only $20 was paid by Darby to Mrs. Prater, and the jury believe that that sum, in fact, belonged to Mrs. Prater, and not to Darby, then the contract between the parties was illegal and void, and plaintiff is entitled to recover, unless barred by the statute of limitations; which charge the court refused to give, and charged the jury, instead thereof, 'that said instruments, if executed at the same time and place, did constitute but one contract; and taking the same in connection with all the evidence of facts occurring at the time, if the proof showed Darby's continuous possession of the negroes for six years, from January 14, 1826, to 1834, then plaintiff cannot recover.' To this charge, and to the refusal to charge as requested, plaintiff excepted.

" The plaintiff then requested the court to charge, that, if the jury believe from the evidence that the only money paid by said Darby to Mrs. Prater was $20, then this small amount, when contrasted with the value of the slaves transferred, and when connected with said Darby's bond, if that bond was executed at the same time with the bill of sale, shows that the contract was not a valid bargain and sale of the negroes, but was an illegal and void contract; which charge the court refused, and plaintiff thereupon excepted.

" The plaintiff then asked the court to charge, that, if the jury believe from the evidence that, at the time said bond and bill of sale were made, said Darby's note for about $500 was taken up by $20, then paid by said Darby, and that said note was given as the consideration of said bill of sale, and that said $20, in fact, belonged to Mrs. Prater, then the statute of limitations did not begin to run, until Darby did some act evincing his intention to hold said negroes absolutely as his own property, and discharged of any obligation to emancipate them; which charge the court refused to give, and plaintiff excepted to the refusal.

"The plaintiff then requested the court to charge, that, if the jury believe from the evidence that said bill of sale and said bond were executed at the same time, and were delivered by the parties respectively as part and parcel of the same contract, and Darby's said bond was the only consideration for said bill of sale, and that Darby was to be compensated for his trouble and expenses in freeing said slaves, by their services, then said contract was void, and plaintiff must recover unless barred by the statute of limitations ; which charge the court refused, and plaintiff excepted."

The only error assigned is, that the court erred as shown by the bill of exceptions.

L. P. & R. W. WALKER, for plaintiff in error :

1. Mrs. Prater's bill of sale and Darby's bond constitute but one agreement, and are to be construed together.—1 Green. Ev. p. 321; 3 Phil. Ev. 1421; 8 Ala. 375; 9 ib. 24; 2 Denio 129. The two instruments together show the conditional character of the delivery; and then the parol evidence shows that the money consideration was less than that recited in the bill of sale. That the parol evidence was admissible, to show that the written instrument was altogether void, or that it never had any binding efficacy, see Corbin v. Sistrunk, 19 Ala. 203; Dixon v. Barclay, 22 ib. 378. And that the acknowledgment in the bill of sale, as to the consideration, is considered as a receipt for money merely, and therefore open to explanation by parol proof, see 5 Ala. 224; 8 ib. 24; 12 ib. 678. The contract being thus explained by the parol proof, we must look, in ascertaining the intention of the parties, to the subject-matter of the contract, the situation of the parties, the motives that led to it, and the object to be obtained by it.— Watts, ex'r, v. Sheppard, 2 Ala. 425. Thus viewed, it is clear that it was the intention of the parties to free the negroes, and that they sought to consummate this object by the contract entered into. The sale of the negroes did not constitute a substantial contract, distinct from Darby's obligation to manumit them ; the sale and the stipulation to free them were both provided for in the agreement, and had reference to each other, the one depending on the other. The bill of sale and the obligation to free the slaves constitute distinct transactions provided for by one entire contract.—2 Stewart 196.

2. Such a contract is void, because of illegality. The first article of the constitution, in regard to slaves, amounts to an inhibition of the owner's right to emancipate them, except only under such regulations as the Legislature may prescribe.—6 Porter 269, 292 ; 13 Ala., 105 ; 18 *ib.* 515. In 1826, when this contract was made, no such regulations had been prescribed; and this contract must be construed in reference to laws then existing, and to no subsequent changes.—Alston v. Coleman, 7 Ala. 795. It is not necessary that a law should contain prohibitory terms, or impose a penalty, to make a contract in violation of it void.—6 Ala. 21 ; 9 *ib.* 198 ; 13 *ib.* 105 ; 1 Conn. R. 502 ; 19 Johns. 311. The contract was also against public policy, and therefore void.—2 Stewart 175 ; 6 Ala. 20 ; Chitty's Con. 519 ; 11 Wheat. 261, 271.

3. Being thus void for illegality, and as contravening public policy, the plaintiff can recover everything advanced upon it. There is a *locus penitentiœ,* and right of rescission and action. Being void, the contract did not divest plaintiff's title.—9 Porter 154 ; 3 Ala. 37. No change of property was effected by the contract ; the plaintiff might have reclaimed it, and defendant could not have been compelled to keep it and perform his agreement with reference to it.—10 Ala. 569 ; 11 *ib.* 659 ; 2 Green. Ev. § 111 ; 7 Porter 251 ; 2 Stewart 126.

4. The maxim, that where there is an executed illegal contract, and the parties are *in pari delicto,* the law will not interfere, does not apply.—1 Ala. 450 ; 7 *ib.* 357. The contract here is not executed. An executed contract is where the illegal act agreed on has been fully performed—where the *delictum* is complete.—Broom's Legal Maxims, top p. 210 ; 7 Porter 251 ; 10 Ala. 567 ; 11 *ib.* 535, 656 ; 9 Porter 151, 227, 229 ; 11 Johns. 25 ; Chitty's Con. 637 ; 2 Doug. R. (4th ed.) 697. The parties are not *in pari delicto.*—7 Porter 256 ; 7 Johns. 433. The plaintiff committed no crime in making the contract. It is not *malum in se.* The maxim, therefore, does not apply. The contract is simply void on principles of public policy ; and in all such cases, although the contract may be executed, as the parties do not stand technically *in pari delicto,* the plaintiff is entitled to recover.—7 Johns. 433 ; Jacques v. Golightly, 2 Black. R. 1073 ; 7 Term R. 535. In Vischer v. Yates, 11 Johns. 29, C. J. Kent says : " The courts take a

distinction between contracts that are immoral and criminal, and such as are simply illegal and void. Assistance is given to the party in the latter case to recover back his money." The same point is decided by Lord Kenyon, in almost the same language, in Munt v. Stokes, 4 Term R. 561. Where the action is in affirmance of an illegal contract, the object of which is to enforce the performance of an engagement prohibited by law, such an action can never be maintained; but where the action is in disaffirmance of the contract, and seeks to prevent the defendant from retaining the benefit derived from an unlawful act, the plaintiff can recover.—2 Com. Contracts, p. 109, cited in 8 Cowen 24.

5. The statute of limitations is no bar, unless Darby and his executor have been in the adverse possession of the slaves for six years since the cause of action accrued. But Darby's possession was not adverse; the contract of sale, being against public policy, was but a bailment: no title passed to Darby under it (see authorities cited in third paragraph, *supra*). He was, therefore, Mrs. Prater's bailee, or trustee, *sub modo*; and until a trustee does some act evincing his intention to annul the trust or bailment, and to convert the property to his own use, the possession is not adverse.—8 Porter 222; 11 Ala. 1043; 5 *ib*. 90, 407; 3 Yerger 211; 4 *ib*. 104. That this contract, though illegal, created a bailment or trust, see 6 Ala. 345, 589, 600; 7 Porter 256; 4 Kent's Com. 306; 1 Dev. & Bat. Law R. 336, 479; 2 *ib*. 115. The case of Hill v. Hughes, 1 Dev. & Bat. 336, was the gift of a slave by parol, whereas the act of 1806 declared that no gift of a slave should be good unless made in writing; and the court held, that the gift by parol operated as a bailment simply, and that no length of possession, under such gift, would raise a presumption of title in the bailee. The case in 1 Dev. & Bat. 479, reported again in 2 *ib*. 115, is a stronger case, both on the point of bailment and the statute of limitations. In these cases, the gift was illegal, as contravening an express statute; in the case at bar, the contract is void, because against public policy. In neither case, therefore, did the title pass; and defendant, being in possession by sufferance, must be considered as holding under a bailment. But, in addition to this, the proof shows that the bailment was always admitted by Darby, and was recognized in his will. No

adverse holding, in the proper sense of that term, was ever asserted or proved. Applying these principles to the charge of the court, it was clearly calculated to mislead the jury; for it asserted, in effect, that the plaintiff could not recover, if Darby had been six years in possession, no matter what may have been the facts occurring at the time the instruments were executed under which they went into his possession.

WILLIAM COOPER, *contra :*

Darby took the slaves absolutely, and plaintiff has no right to recover. The condition to liberate the slaves is void; yet Darby may remove them from this State and liberate them.— Atwood's Case, 21 Ala. 590; Black & Manning v. Oliver, 1 *ib.* 449, where the vendee of a slave woman gave bond to marry and liberate her, and this court held that he took her unencumbered. This last case has been recognized and affirmed in principle, in Corprew v. Arthur, 15 Ala. 531, where it is ruled, "that when the parties are in equal fault, in making an illegal contract, better is the condition of him in possession," and the law will aid neither touching the contract.—Boyd v. Barclay, 1 Ala. 34; 2 Stewart 175; Hopper, adm'r, v. Steele, 18 Ala. 831; Burt v. Place, 6 Cowen 431; 8 Barb. S. C. R. 449; 7 Sm. & Mar. 380; 4 Peters 184; 11 Mass. 368; 8 Sm. & Mar. 624.

In answer to the above position, Terrel's counsel relies upon the decision of this court in 11 Ala. 659; but that case does not conflict with our position; it does not, on its face, purport to overrule the cases above cited, and the principle asserted in it does not conflict with the principles of those cases. In suits respecting lands, whoever sets up title must hold it by written documents; and if they are void by statute, of course his defence fails. But this is not the case with regard to personal property; slaves, for example, are taken by delivery, and held by oral title, and need no paper title; and the case in 11 Ala. (p. 659) is expressly put on the ground, that the deed being void, the title still remained with the grantor. Money loaned usuriously cannot be recovered back.—5 Johns. Ch. 142; 2 Story's Eq. 300.

The idea that there is a *locus penitentiæ*, at which one *in pari delicto* can retrace his steps, and have back what he has illegally

disposed of, under the assumption of a trust or bailment, is wholly untenable in this case. In the case of Rochell v. Harrison, 8 Porter 352, the owner of slaves conveyed them, in fraud of creditors, and contrary to statute ; yet it was held, that the title passed by delivery of possession, and that the vendee should hold them against his vendor.—11 Mass. 375 ; 8 Johns. 515 ; 18 Ala. 831.

There is here no distinction between *malum in se* and *malum prohibitum*: all are void, being illegal, and the same rule obtains as to *pari delicto*.—1 Ala. 34 ; *ib*. 449 ; 15 *ib*. 553 ; 18 *ib*. 828 ; 6 *ib*. 16 ; Pennington & Kean v. Townsend, 7 Wend. 280 ; 20 Johns. 397 ; U. S. Bank v. Owen, 2 Peters 527 ; 7 Johns. 433 ; 8 Cowen 20 ; *ib*. 195 ; 1 Parsons on Contracts, p. 382, and note (a) ; Jackson v. Walker, 5 Hill (N. Y.) 27.

No consideration was necessary from Darby, as she had a right to make a voluntary conveyance of the slaves. But the $500 paid is a sufficient consideration, and estops her and her administrator. Judge Story decided, that one dollar was enough to bind a grantor to the amount of upwards of $40,000 ; and that, if the one dollar had not been paid, the grantor had a right to it, and might have it by suit.—Lawrence v. McAlmont, 2 How. (U. S.) 426 ; 7 Vesey 249 ; 10 *ib*. 470 ; 7 *ib*. 34.

Darby held adversely to Mrs. Prater. All who hold by deed alsolute, hold against the *vendee* ; bare possession and claim of right, without deed, is adverse.—Herbert v. Hanrick, 16 Ala. 595 ; Hinton v. Nelms, 13 *ib*. 222 ; Abercrombie v. Baldwin, 15 Ala. 363 ; 24 Wend. 587.

If Mrs. Prater had the right to repudiate her deed of sale to Darby (which we do not concede), she should have done so within six years from the date of the conveyance, or she was barred by the statute of limitations.—Howell v. Hair, 15 Ala. 194 ; Powell v. Wragg & Stewart, 13 *ib*. 161 ; Sims v. Canfield, 2 *ib*. 561 ; 11 Wheat. 361 ; 5 Cranch 358 ; 24 Wend. 587 ; Humphrey v. Terrell, 1 Ala. 650 ; Brown v. Brown, 5 *ib*. 508 ; Williams v. Harvey, 3 *ib*. 371.

The charge of the court below, therefore, was correct.

CHILTON, C. J.—Several questions have been argued by the counsel in this case, which are not presented by

the assignment of errors. The rule which has uniformly obtained in this court, in civil cases, is, that no errors will be noticed which are not assigned. Confining ourselves to the matter presented by the bill of exceptions, which alone is insisted upon by the plaintiff in error as erroneous, we proceed at once to consider the nature of the agreement entered into between Mrs. Prater and Richard Darby.

1. The bill of sale made by Mrs. Prater, and the bond executed by Darby to her, referring to the same subject-matter, and executed at the same time between the parties, must be considered together, and as forming but one agreement. What is its legal effect?

The respective counsel for both the parties concede, that it is void, but they arrive at opposite conclusions as to the legal consequences growing out of it ; for the plaintiff's counsel insists, that, being void and executory, the title remained in Mrs. Prater, and may be asserted by her administrator ; while, on the other hand, the counsel for the defendant contends, that both parties being equally in the wrong, the condition of the possessor is the better.

We have carefully considered the nature of the two instruments taken together, and in connection with the surrounding circumstances, and we are satisfied that both the counsel have misconceived the legal effect of the agreement. Its validity depends upon whether the undertaking of Darby to free the slaves, was legal ; for, if this be valid, it forms, of itself, a valid consideration for the bill of sale. There would then be a promise for a promise, or rather, mutual obligations, under seal, entered into by the parties, the one constituting the consideration for the other. We repeat, if the undertaking of Darby was valid, there can be no question that it formed a sufficient consideration for the bill of sale.

There is nothing on the face of Darby's bond which requires him to free the slaves *in this State ;* the undertaking is general, and consequently embraces any and every mode by which it might lawfully be effected. If, then, he might in any way have lawfully carried out the undertaking to emancipate, we must intend that that mode was in the contemplation of the parties ; for the rules of construction

33

require, that where an agreement admits of two interpretations, we must give it that which makes it avail, "*ut res magis valeat, quam pereat.*" The parties, doubtless, were aware that the slaves could not be liberated in this State; otherwise, Mrs. Prater would at once have emancipated them. They were, moreover, apprised that this could be done by their removal to a free State; for, with a view of accomplishing that very object, Mrs. Prater was then on the eve of removing to the State of Illinois, and left on the day the agreement was entered into.

It cannot be denied, that Mrs. Prater could have taken the slaves with her, and have liberated them in any State whose laws did not forbid it; neither will it be controverted, that she could have retained and worked them until they attained the respective ages of 28 years, and then have sent them to Liberia, or elsewhere, so as to have effected their emancipation. If she could have done this herself, why could she not do it by another?

We had occasion to examine this question very fully in the case of Atwood's Heirs v. Atwood's Ex'r, 21 Ala. 590, and there held, that there was nothing, either in the constitution or laws of this State, forbidding the emancipation of slaves by their removal to a non-slaveholding State.

This view disposes of the case; for the charges asked and refused by the court are based upon the erroneous idea that the bill of sale and bond, when construed together as constituting but one agreement, are void.

It will be observed, that this is not an attempt on the part of Mrs. Prater to vest any rights *in the slaves* to their freedom; and the agreement, therefore, is not obnoxious to those decisions which hold that contracts and bequests of that character are void by reason of the slave's incapacity to take.

We have been cited to the case of Trotter, adm'r &c., v. Blocker and Wife, 6 Port. 260, as an authority to prove that, in virtue of the constitutional provisions in regard to the right of emancipation, this right is entirely denied to the citizen, except as it may be conferred by the Legislature.

It is conceded in that case, "that the owner of property is free to relinquish his right to it, at pleasure, as a general proposition; and the manner of relinquishment, in the absence

Prater's Adm'r v. Darby.

of legal restraints, must be left to his discretion." It was further conceded, that, at common law, the owner possessed the right of setting at liberty his slaves. But it was held, that the constitutional provision, which declares that the General Assembly "shall have power to pass laws to permit the owners of slaves to emancipate them, saving the rights of creditors, and preventing them from becoming a public charge," was a clear delegation of authority to the Legislature, to regulate by law the emancipation of slaves, "*and is quite as potent as if it contained negative terms, inhibiting the exercise of such a right, but in obedience to the expressed will of the General Assembly.*" If this construction be correct, it would seem to follow, that every conceivable mode of emancipation, other than such as the Legislature may confer, is prohibited by the fundamental law.

We have examined this subject with much care, and, although reluctant to depart from a decision upon so grave a constitutional question, yet we are unable to perceive any just rule of construction which warrants such interpretation ; and, as it might lead to infinite mischief, if carried out in all its bearing in reference to the State and Federal constitutions, we feel constrained to dissent from it, and, as to so much of that decision as is expressed in the first clause of the fifth head-note, to overrule it.

A few observations may serve to show the incorrectness of the construction given by the court to the constitution in that case; and, first, it may be observed, that it would appear somewhat improbable that the people, the true source of power in a republican government, should yield up to one of the departments of the State a natural, common-law right, thus making themselves ever afterwards dependent upon the Legislature to re-invest them with it.

In the next place, we deem it too clear to admit of argument, that power given to the General Assembly to legislate upon certain rights, so as to control their exercise or enjoyment, cannot be construed legitimately into an abrogation of such rights. There is no such repugnance between constitutional liberty and common-law rights, as that the bare mention of the latter in the fundamental laws of the State, as proper subject-matter for legislation, should be tantamount to an express

negation of them. If the construction there given be correct, then the eighteenth section of the sixth article, which makes it the duty of the Legislature to pass laws for settling differences by arbitration, in the absence of such laws, strikes down the right which the people possess of adjusting difficulties in this way.

The same rule, when applied to the Federal constitution, would inhibit the State from providing for the punishment of counterfeiters of the current coin of the Union, and would make the States of the Union dependent upon the Federal Government for their republican forms of government, and deny to them the right of self-preservation and protection; since the Federal constitution confers upon Congresss power to provide punishment for counterfeiting the coin of the United States, and the United States guaranties to each State a republican form of government, and protection against invasion and domestic violence, &c.

The view we have taken is conclusive of the case, and sh ows that there are no errors in the bill of exceptions prejudicial to the plaintiff in error.

Let the judgment be affirmed.