CITY OF ORANGE BEACH, ALABAMA, Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY, Defendant/Third–Party Plaintiff,

v.

STONE, GRANADE, CROSBY & BLACKBURN, P.C., Third–Party Defendant.

Civil Action No. 94–0564–AH–M.

United States District Court, S.D. Alabama, Southern Division.

March 27, 1996.

William Whitfield, Gulfport, MS, Richard Burton Bush, Tallahassee, FL, for Third–Party Plaintiff.

Broox G. Holmes, Edward A. Dean, Mobile, AL, for Third–Party Defendant.

### *ORDER*

HOWARD, District Judge.

This matter is before the Court on the "Motion for Separate Trial of Third Party Action Against Stone, Granade, Crosby & Blackburn, P.C." filed by Third–Party Plaintiff Scottsdale Insurance Company ("Scottsdale") on September 11, 1995 (Doc. # 54), and on the "Motion to Dismiss Amended Third–Party Complaint" filed by Third–Party Defendant Stone, Granade, Crosby & Blackburn, P.C., ("Stone Granade" treated as a singular collective noun) on December 13, 1995 (Doc. # 64). After considering the extensive arguments submitted by both parties on the issues raised by both Motions, the Court finds Stone Granade's Motion to Dismiss is due to be **GRANTED.** Therefore, the Court **GRANTS** the Motion to Dismiss the Amended Third–Party Complaint. [Doc. # 64]. As the Court has given Scottsdale sufficient opportunity to attempt to file a sufficient third-party complaint and Scottsdale has failed, the Court finds that further attempts to amend would be futile and would prejudice Stone Granade. Therefore, the Court **ORDERS** that the Amended Third–Party Complaint be **DISMISSED WITH PREJUDICE.** Such dismissal renders Scottsdale's Motion for Separate Trial **MOOT.** [Doc. # 54].

## I. Procedural History

The procedural history of this case is unique. Therefore, the Court will outline the procedural history to place the matters before the Court in the appropriate context.

**July 26, 1994**—The City of Orange Beach, Alabama ("Orange Beach") filed a Complaint naming Scottsdale, Orange Beach's insurance company, as sole Defendant. The basic facts that lead to the filing of the Complaint relate to a suit brought against Orange Beach in the Circuit Court of Baldwin County, Alabama on June 26, 1989. *Isle of Fantasy, Perdido Pass Developers, Inc., et al. v. The Town of Orange Beach, et al.,* CV–89–450 (the "Baldwin County action"). Scottsdale assumed the defense of Orange Beach under a reservation of rights. By letter dated September 21, 1992, Orange Beach demanded that Scottsdale settle the lawsuit within the limits of the policy. Scottsdale refused. On September 28, 1992, a jury rendered a verdict in favor of the only remaining plaintiff and against Orange Beach in the amount of $4.5 million for breach of contract. The verdict was affirmed by the Alabama Supreme Court in *City of Orange Beach v. Perdido Pass Developers, Inc.,* 631 So.2d 850 (Ala. 1993).

Orange Beach's Complaint in this action brings claims for "Bad Faith Failure to Settle" (Count One) and "Negligent Failure to Settlement [sic]" (Count Two).

**August 29, 1994**—Scottsdale filed an Answer to the Complaint. [Doc. # 5].

**September 13, 1994**—Scottsdale filed an "Amended Answer, Counterclaim and Third–Party Complaint." [Doc. # 9]. The Third–Party Complaint named Stone Granade as the Third–Party Defendant. Scottsdale alleged that, on the insistence of Orange Beach, Scottsdale retained Stone Granade to represent the interests of Orange Beach in the Baldwin County action. Scottsdale further alleged that Stone Granade had a duty to "properly investigate, evaluate and report on the case against the Plaintiff, City of Orange Beach, in order for [Scottsdale] to properly evaluate its duty, if any, to settle the claim against the Plaintiff, City of Orange Beach." Amended Answer, p. 12,

¶ 7. Scottsdale alleged that it would be entitled to "contribution and indemnity from said Third–Party Defendants in the event that [Scottsdale] is found to be liable to the [City of Orange Beach]...." *Id.* at pp. 13–14.

**October 11, 1994**—Stone Granade filed an Answer to the Third–Party Complaint (Doc. # 16) and a "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted." [Doc. # 17]. In the Motion to Dismiss, Stone Granade argued that Scottsdale's Third–Party Complaint should be dismissed pursuant to FED.R.CIV.P. 12(b)(6) because Alabama law does not recognize actions for indemnity or contribution from joint tort-feasors who are both actively negligent.

**January 9, 1995**—The Court entered an Order (Doc. # 32) and Judgment (Doc. # 33) granting Stone Granade's Motion to Dismiss on the ground that no set of facts existed from which Scottsdale could be granted relief. The Court's Judgment stated that "the Third–Party Plaintiff's claim [sic] against the Third–Party Defendant are due to be, and hereby are, **DISMISSED** without prejudice." Judgment, (emphasis and caps in original).

**January 17, 1995**—Scottsdale filed a "Motion for Leave to Amend Third Party Complaint." [Doc. # 35]. Such Motion was apparently filed before Scottsdale received a copy of the Court's January 9 Order and Judgment as Scottsdale's Motion for Leave to Amend does not reference the Order and Judgment. The Motion to Amend sought to amend the Third–Party Complaint to include a claim that Stone Granade breached "a duty to Scottsdale Insurance Company to exercise the standard of care set forth in Code of Alabama, § 6–5–580." Proposed Amended Complaint, p. 2, ¶ 7.

**January 18, 1995**—Stone Granade filed an objection to the Motion to Amend. [Doc. # 36].

**January 24, 1995**—Scottsdale filed a "Motion to Vacate or In the Alternative Motion to Reconsider Judgment and Order Dated January 9, 1995 and Leave to File an Amended Third Party Complaint" (Doc. # 38) and a Motion requesting oral argument on the Motion to Reconsider. [Doc., # 40].

**February 9, 1995**—Scottsdale filed a Notice of Appeal of the Court's January 9, 1995, Order and Judgment.

**February 10, 1995**—Prior to receiving of the Notice of Appeal, the Court granted Scottsdale's request for oral argument and scheduled a hearing on the Motion to Vacate for March 10, 1995. [Doc. # 45].

**March 24, 1995**—Scottsdale filed a "Motion to Withdraw Defendant/Third–Party Plaintiff, Scottsdale Insurance Company's 'Motion to Vacate or In the Alternative to Reconsider Judgment and Order Dated January 9, 1995, and Leave to File Amended Complaint.'" [Doc. # 47]. Scottsdale stated that it had settled its claims with Orange Beach and that if the Court granted the Motion "the City may ... move to dismiss its claims. This Court will be serving the interests of all parties involved, and will promote judicial economy." Scottsdale's Motion, p. 1–2. On March 28, 1995, the Court stamped the Motion, "Motion Granted."

**April 5, 1995**—Scottsdale filed a "paper" titled "Scottsdale's Notice of Withdrawal of Its 'Motion to Withdraw Motion to Vacate, Etc.," and Scottsdale's Amended Motion to Vacate Judgment or In the Alternative Motion to Reconsider Judgment and Order Dated January 12, 1995 and For Leave to Amend." [Doc. # 49].

**April 26, 1995**—The Court entered an Order stating that the Court no longer had jurisdiction over Scottsdale's Motion to Vacate and Motion to Amend because the matter was on appeal. [Doc. # 53].

**August 31, 1995**—The United States Court of Appeals for the Eleventh Circuit dismissed Scottsdale's appeal for lack of jurisdiction on the ground that the Court's January 9, 1995 judgment was not final and appealable. [Doc. # 58].

**September 11, 1995**—Scottsdale filed a "Motion for Separate Trial of Third Party Action Against Stone Granade...." (Doc. # 54) and a Motion for oral argument. [Doc. # 55].

**September 20, 1995**—The Court ordered a hearing on the Motion for Separate Trial for November 13, 1995. [Doc. # 57].

**November 14, 1995**—After holding the hearing on November 13, the Court granted Scottsdale's Motion to Amend the Third–Party Complaint (Doc. # 35) and ordered Stone Granade to respond to the Amended Complaint with a motion to dismiss by December 13, 1995. The Court reserved ruling on Scottsdale's Motion for Separate Trial until Stone Granade filed its motion to dismiss. [Doc. # 62]

**November 27, 1995**—Scottsdale filed an Amended Third–Party Complaint. [Doc. # 63]. Scottsdale's Complaint raises eight separate counts: "Professional Malpractice" (Count I), "Fraud/Alabama Code § 6–5–100" (Count II), "Fraud/Alabama Code § 6–5–101" (Count III), "Fraud/Alabama Code § 6–5–102" (Count IV), "Fraud/Alabama Code § 6–5–103 and 6–5–104" (Count V), "Breach of Contract" (Count VI), "Equitable Subrogation" (Count VII), and "Unjust Enrichment" (Count VIII).

**December 13, 1995**—Stone Granade filed a "Motion to Dismiss Amended Third–Party Complaint." [Doc. # 64].

**December 27, 1995**—Scottsdale filed a Response to Stone Granade's Motion to Dismiss. [Doc. # 66].

**January 18, 1996**—Stone Granade filed a Reply to Scottsdale's Response. [Doc. # 68].

The above circuitous procedural route was caused partially by the Court's entering a separate Judgment when it granted Stone Granade's first Motion to Dismiss. According to Scottsdale, it was confused by such Judgment and in an abundance of caution chose to appeal. However, the Judgment specifically stated that the Third–Party Complaint was dismissed without prejudice. In fact, Scottsdale filed a Motion to Vacate or to Amend the Third–Party Complaint, but before the Court could rule on such Motion, Scottsdale filed its Notice of Appeal. As the action now stands, although Orange Beach has not filed a motion to dismiss its claims against Scottsdale, Orange Beach and Scottsdale have apparently settled their dispute. Therefore, all that remains in this action is the Amended Third–Party Complaint.

## II. FEDERAL RULE OF CIVIL PROCEDURE 14(a)

FED.R.CIV.P. 14(a) governs third party practice. Rule 14(a) states in pertinent part:

**(a) When a Defendant May Bring in Third Party.**

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable* to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

FED.R.CIV.P. 14(a) (italics added).

### A. Original Third–Party Complaint

Scottsdale's original Third–Party Complaint alleged that it was entitled to indemnification and contribution from Stone Granade. Stone Granade moved to dismiss such Third–Party Complaint for failure to state a claim upon which relief can be granted. In its Order dated January 9, 1995, the Court applied Alabama law regarding indemnity and contribution. *See* Document 32. The Court found that under Alabama law a joint tortfeasor is entitled to indemnity in two narrow instances: (1) where a valid indemnity agreement exists or (2) when the tortfeasor is guilty only of passive negligence. *Sherman Concrete Pipe Machinery, Inc, v. Gadsden Concrete & Metal Pipe Co., Inc.*, 335 So.2d 125, 127 (Ala.1976). Similarly, contribution is only available where one tortfeasor is liable only by reason of the negligence or fault of the other. *Matter of Covington Grain Co., Inc.*, 638 F.2d 1357, 1362 (5th Cir. Unit B, 1981).[1] Scottsdale does not dispute that there was no indemnity agreement between Scottsdale and Stone Granade. Therefore, the only argument for indemnity and contribution was that Scottsdale, if negligent, was only passively negligent. In other words, if Scottsdale negligently or in bad faith failed to settle the claim against Orange Beach, they did so solely because of the actions or inactions of Stone Granade. The Court disagreed.

In Alabama an insurance company has an independent duty to exercise "honest judgment" in determining whether a claim against its insured should be settled. *State Farm Mut. Auto. Ins. Co. v. Hollis*, 554 So.2d 387 (Ala.1989). As stated by the United States District Court for the Northern District of Alabama, "[a] decision not to settle by an insurance company must be a thoroughly honest, intelligent, and objective decision. It must also be a realistic one when tested by the necessarily assumed expertise of the insurance company." *Carrier Express, Inc. v. Home Indem. Co.*, 860 F.Supp. 1465, 1479 (N.D.Ala.1994). Among the factors that should be considered by an insurance company is the advice of its counsel, however, advice of counsel is only one of many factors that should be considered by an insurance company. *Id.* at 1479–1480. Scottsdale had an independent duty with regard to settlement of the Baldwin County action against the City of Orange Beach. Scottsdale was charged by Orange Beach with active negligence and under no set of facts could Scottsdale seek indemnity or contribution. The Court found that Scottsdale failed to state a claim for which relief could be granted and the Court dismissed the Third–Party Complaint without prejudice.

### B. Amended Third–Party Complaint

■ Stone Granade's current Motion to Dismiss seeks to dismiss the Amended Third–Party Complaint on the ground that is fails to satisfy the requirements of FED. R.CIV.P. 14(a). "Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action if that third person's liability on that claim is in some way dependent upon the outcome of the main claim. Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987).

---

1. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the United States Court of Appeals for the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

In its Amended Third–Party Complaint, Scottsdale alleges several causes of action, some of which Scottsdale argues are derivative of the main claim brought by Orange Beach against Scottsdale (equitable subrogation, legal malpractice, and fraud) and some of which Scottsdale concedes are not derivative (breach of contract and unjust enrichment), but should be allowed pursuant to FED.R.CIV.P. 18(a) (Joinder of Claims). The Court agrees with Scottsdale that if any of the claims asserted by Scottsdale are proper impleader claims under Rule 14(a), such claim(s) may serve as an anchor claim for any other separate and independent claims against Stone Granade which may be brought under Rule 18(a). Therefore, the issue that controls the question of whether Scottsdale's Amended Third–Party Complaint should be dismissed is whether Scottsdale's claims for professional malpractice, fraud, and equitable subrogation are derivative claims and proper impleader claims or are separate and independent claims.

■ "Given the emphasis on the liberal reading of 'claim,' it is easy to lose track of a major limitation on the availability of impleader: it must be an assertion of the third-party defendant's derivative liability to the third-party plaintiff. Thus, an impleader claim cannot assert any and all rights to recovery arising from the same transaction or occurrence as the underlying action." *3 Moore's Federal Practice,* ¶ 14.07, at 14–48 (2d ed.1995) (footnotes omitted). The United States Court of Appeals for the Fifth Circuit has held that:

> The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader only in cases where the third party's liability was in some way derivative of the outcome of the main claim. In most such cases it has been held that for impleader to be available the third party must be "liable *secondarily* to the original defendant in the

event that the latter is held liable to the plaintiff." (citations omitted).

*United States v. Joe Grasso & Son, Inc.,* 380 F.2d 749 (1967).[2] With these instructions and warnings in mind the Court analyzes Scottsdale's claims.

### 1. Professional Malpractice

■ In Count I of the Amended Third–Party Complaint Scottsdale alleges that Stone Granade committed professional malpractice by: (1) representing both Scottsdale and Orange Beach, thus allegedly creating a conflict of interest, and (2) by failing to fully investigate the Baldwin County action and fully inform Scottsdale of the status of such action. While such malpractice claim is related to the Orange Beach claims against Scottsdale, the malpractice claim is separate and independent from the Orange Beach claim against Scottsdale. As stated above Scottsdale has an independent duty to its insured to exercise honest judgment with regard to the settlement of claims. If Scottsdale breached its duty it did so by its own actions or inactions. Therefore, Scottsdale could be found to have acted negligently or in bad faith regardless of whether Stone Granade was guilty of professional malpractice. In fact, Scottsdale could be victorious in the main claim even if Stone Granade committed the alleged professional malpractice. The above is true because advice of counsel is only one of the many factors that an insurance company must consider when denying to settle a claim. The claim for professional malpractice is not dependent upon Orange Beach's claims against Scottsdale for negligent and bad faith failure to settle a claim. Therefore, Count I is a separate and independent claim that cannot serve as a proper impleader claim under Rule 14(a).

### 2. Fraud

■ Counts II through V of the Amended Third–Party Complaint are all fraud claims brought under five separate sections of the Alabama Code. All of the fraud claims relate to the alleged representations made about

**2.** The United States Court of Appeals for the Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981), adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the asserted conflict of interest and alleged misrepresentations made with regard to the Baldwin County action. Again, such claims, while related, are separate and independent from the Orange Beach claims against Scottsdale. Because Scottsdale has an independent duty to fully investigate claims made against its insured, it could be held liable for negligent and/or bad faith failure to settle regardless of any fraud committed by Stone Granade. The converse is also true. Scottsdale could escape liability on the main claim even though Stone Granade fraudulently represented certain facts to Scottsdale. Therefore, Counts II through V are not derivative claims and are not proper impleader claims under Rule 14(a).

### 3. Equitable Subrogation

■ Stone Granade's Motion to Dismiss with regard to Count VII, "Equitable Subrogation," moves for dismissal on the basis that such claim is merely a restatement of Scottsdale's original claims for indemnity and contribution. Stone Granade concedes that true equitable subrogation is generally a derivative claim and thus proper under Rule 14(b), however, Stone Granade argues that in this action the claim raised in Count VII has already been dismissed for failing to state a claim for which relief can be granted. The Court agrees.

Paragraph 100 of the Third Amended Complaint states that Stone Granade "as the wrongdoer, should be required to recompense Scottsdale for the amounts Scottsdale paid out for defending and settling the underlying actions, for costs and attorney's fees, and for any other relief this court finds just and equitable." Although Scottsdale titles Count VII "Equitable Subrogation" the above-quoted language indicates that such claim is a restatement of the earlier claim for indemnity and contribution. Scottsdale again contends that if it is liable, it is liable only through the actions of Stone Granade.

Scottsdale wants to place itself in the position of the employer in *American Southern Ins. Co. v. Dime Taxi Service, Inc.,* 151 So.2d 783 (Ala.1963). In *American Southern,* a taxi driver employed by Dime Taxi Service, Inc., and acting in the scope of his employ-

ment, negligently drove his taxi and caused an injury to a passenger in his cab. *Id.* at 784. The passenger sued Dime Taxi and won a judgment against Dime Taxi. The taxi driver died as a result of the accident and Dime Taxi filed a claim against his estate for the amount of the judgment recovered against Dime. *Id.* Dime succeeded in winning subrogation to the rights of the injured plaintiff and recovering against the driver's insurer, American Southern Insurance. In affirming such judgment, the Supreme Court of Alabama held that "[a] master is entitled to recover from his servant damages which the master has been required to pay by reason of the negligence of his servant." *Id.* at 785 (citations omitted). On the subrogation issue, the Court held that "where recovery is obtained against a master under the theory of respondeat superior for the tort of negligence of his servant, the master is subrogated to the rights of the injured party against the servant." *Id.* at 787 (citations omitted).

This action is distinct from *American Southern.* If Scottsdale is found to have acted negligently or in bad faith in failing to settle the claims against Orange Beach, such liability will be a result of the actions or inaction of Scottsdale. Scottsdale owed an independent duty to Orange Beach and any negligence on the part of Scottsdale would be active negligence and any liability of Scottsdale to Orange Beach would not be because of the doctrine of respondeat superior. Therefore, because any negligence on the part of Scottsdale would be active and not passive, the Court finds that Count VII is due to be **DISMISSED** for failure to state a claim upon which relief can be granted.

### III. Conclusion

The Court finds that Stone Granade's Motion to Dismiss Amended Third–Party Complaint is due to be **GRANTED.** Accordingly, the Court **ORDERS** that Scottsdale's Amended Third–Party Complaint is **DISMISSED WITH PREJUDICE.**

Additionally, the motions and briefs filed by Scottsdale indicate that Scottsdale has

settled the underlying dispute with Orange Beach. Therefore, it is **ORDERED** that the Complaint filed by Orange Beach against Scottsdale be **DISMISSED WITH PREJUDICE** subject to the right of either Orange Beach or Scottsdale to reinstate this action within thirty (30) days of the date of this . Order should the settlement agreement not be consummated.