REL: 09/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

---

## 1121140

---

**Ex parte Tommy Sundy**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: API Holdings, LLC**

**v.**

**Frost Cummings Tidwell Group, LLC)**

**(Jefferson Circuit Court, CV-12-902502)**

MURDOCK, Justice.

Tommy Sundy petitions this Court for a writ of mandamus directing the Jefferson Circuit Court to dismiss third-party

claims asserted against him by the Frost Cummings Tidwell Group, LLC ("FCT"), an accounting firm. We deny the petition.

## I. Facts and Procedural History

In June 2005, Adams Produce Company, Inc. ("APCI"), purchased Crestview Produce of Destin, Inc., from Sundy. As part of the transaction, APCI and Sundy executed a promissory note in the amount of $850,000. Sundy became an employee of APCI. FCT alleges that, based on representations from APCI and Sundy, certain budget and bonus projections were set for APCI, but those goals were not met. Because of the failure to meet those projections, Sundy was not entitled to bonuses that had been paid to him throughout 2009. With the alleged help and direction of FCT, APCI recharacterized the bonuses as repayments of principal on the promissory note. The nonpayment of certain amounts to Sundy in the context of this recharacterization had the effect of increasing APCI's income and decreasing its indebtedness. APCI also allegedly entered into an oral, undocumented agreement with Sundy stipulating that it would make him whole in future years for the forfeited bonus payments.

1121140

In 2009, APCI's shareholders decided to sell the company to API Holdings, LLC. One step in that transaction involved APCI's creating Adams Produce Company, LLC ("APC"). Another step in the transaction involved APCI's retaining FCT in March 2010 to perform an audit and to make a report concerning APCI's 2009 financial statements ("the audit report"). FCT completed the audit and submitted the audit report to APCI in September 2010.[1] FCT admits in its third-party complaint that it investigated the recharacterization of bonuses paid to Sundy and that it confirmed in the audit report that the recharacterization was correct. FCT denies that it had any knowledge of the side agreement between APCI and Sundy to reimburse him for the forfeited bonuses in future years.

Pursuant to an "Asset Contribution Agreement" executed on September 3, 2010, APCI transferred all of its assets and liabilities to APC. On the same day, API Holdings entered into a "Membership Interest Purchase Agreement" pursuant to which API Holdings purchased all, or a controlling part of, the membership interests in APC for a total purchase price of

_____

[1]FCT also performed an audit for APC the following year for the 2010 fiscal year, and its report for that audit apparently contained the same recharacterization of the bonuses, affecting APC's financial outlook.

3

1121140

$20,490,000. In the purchase agreement, API Holdings received assurances that all aspects of APC's financial condition had been disclosed to it through the audit report submitted by FCT.

API Holdings alleges that, following its purchase of APC, it discovered that, contrary to representations made by FCT in the audit report, APCI's financial statements were fraudulent, causing API Holdings to believe that APC was worth more than it actually was.

On August 9, 2012, API Holdings sued FCT in the Jefferson Circuit Court asserting claims of negligent misrepresentation, auditing malpractice, fraud, and other claims of professional malfeasance. In general, API Holdings alleged that it had relied upon the audit report when it agreed to purchase APC and when it agreed upon the purchase price. Among several other claims, API Holdings alleged that FCT had failed to uncover misrepresentations by Sundy and APCI and that FCT had acted fraudulently in confirming the recharacterization of Sundy's bonuses as payments on principal of the promissory note.

4

On April 27, 2012, APC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Alabama ("the bankruptcy court"). On October 19, 2012, APC filed an adversarial complaint in the bankruptcy court against FCT, alleging that FCT's audit work had painted a false financial picture of APC upon which APC had relied in continuing to operate its business even after reaching the point of insolvency.[2] APC alleged that it had continued to operate past the point of insolvency and had incurred additional debt that it otherwise would not have incurred but for its reliance upon representations provided by FCT in the audit report (i.e., the report applicable to 2009) and in the similar report prepared by FCT with respect to APC's 2010 fiscal-year activities. Specifically, APC alleged that the audit reports indicated that APC's cash position was more favorable than it actually was.

On March 18, 2013, FCT filed a third-party complaint in the bankruptcy court against Sundy and others. FCT's complaint alleged various theories under Alabama law as bases

---

[2]APC included allegations regarding FCT's audit work for fiscal year 2010 because, according to its complaint, "[t]he 2010 Audit Report was based, in part, on the 2009 Financial Statements and the 2009 Audit Report." See supra note 1.

for FCT to "recover over" against Sundy. Those claims, as contemplated by Rule 14(a)(1), Fed. R. Civ. P., are "for all or part of the [plaintiff's] claim against [the third-party plaintiff]," i.e., APC's claims against FCT (for the injury suffered by APC in incurring additional debt and eventually suffering insolvency).

On March 21, 2013, three days after filing its third-party complaint in the federal action in the bankruptcy court, FCT filed a third-party complaint against Sundy and others in the Jefferson Circuit Court case filed by API Holdings. Again, as contemplated by Rule 14(a), Ala. R. Civ. P., FCT filed its third-party claims in the Jefferson Circuit Court action for the purpose of recovering from Sundy "for all or part of the plaintiff's claim against the third-party plaintiff" in that case, i.e., API Holdings' claims against FCT (for the investment losses suffered by API Holdings following its purchases of APC). Of course, in the case of the Jefferson Circuit Court action, the plaintiff is API Holdings, not APC, and the claims it asserted for its investment losses were, of course, not the same as the claims

1121140

held by APC and asserted by APC as the plaintiff in the federal action in the bankruptcy court.

Sundy subsequently filed in the Jefferson Circuit Court a motion to dismiss FCT's third-party complaint in that case on the basis of § 6-5-440, Ala. Code 1975, Alabama's abatement statute. Following the submission of arguments and a hearing on the motion, the circuit court denied the motion on June 7, 2013. Sundy timely filed a petition for a writ of mandamus seeking to have this Court direct the circuit court to vacate its judgment denying the motion to dismiss and to order the circuit court to dismiss FCT's claims against Sundy asserted in its third-party complaint in the Jefferson Circuit Court action.

On July 24, 2013, this Court ordered answers and briefs to the petition. On July 30, 2013, FCT filed in this Court a motion to stay its response time because it had filed in the bankruptcy court a motion to dismiss APC's complaint against FCT pending in that court. This Court granted the motion to stay the response time. Subsequently, the bankruptcy court denied FCT's motion to dismiss APC's complaint, and FCT filed its response to Sundy's mandamus petition in this Court.

## II.  Standard of Review

"'[A] writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion.' Ex parte Palm Harbor Homes, Inc., 798 So. 2d 656, 660 (Ala. 2001). Mandamus is the appropriate remedy to correct a trial court's failure to properly apply § 6-5-440. See Ex parte Chapman Nursing Home, Inc., 903 So. 2d 813 (Ala. 2004); Ex parte Breman Lake View Resort, L.P., 729 So. 2d 849, 852 (Ala. 1999)."

Ex parte J.E. Estes Wood Co., 42 So. 3d 104, 108 (Ala. 2010).

"The standard for deciding whether two actions may proceed in different courts is similar to the standard applied for determining the applicability of the doctrine of res judicata; that is, whether the issues in the two actions are the same and whether the same evidence would support a recovery in both actions."

Ex parte Brooks Ins. Agency, 125 So. 3d 706, 710 (Ala. 2013).

## III.  Analysis

Section 6-5-440, Ala. Code 1975, Alabama's abatement statute, provides:

"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."

The parties do not dispute that § 6-5-440 applies to abate a State-court action on the ground that the same action was previously filed and remains pending in a federal court in this State. See Ex parte J.E. Estes Wood Co., 42 So. 3d at 108 (quoting Ex parte Norfolk Southern Ry., 992 So. 2d 1286, 1289 (Ala. 2008)) (stating that "'[t]his Court has previously held that an action pending in a federal court falls within the coverage of this Code section'").

This Court previously has explained the history behind the prohibition codified in § 6-5-440:

> "'Section 6-5-440, as initially codified in Ala. Code 1907, § 2451, was "a transcript of section 4331 of the Civil Code of Georgia." Ex parte Dunlap, 209 Ala. 453, 455, 96 So. 441, 442 (1923). See current version at Ga. Code Ann. § 9-2-5(a) (Michie 1982). However, these statutes merely codified the principle expressed in the common-law maxim: "Nemo debet bis vexari (si constet curiae quod sit) pro una et eadem causa," that is: "No man ought to be twice troubled or harassed (if it appear to the court that he is), for one and the same cause." O'Barr v. Turner, 16 Ala. App. 65, 67-68, 75 So. 271, 274 (1917), cert. denied, 200 Ala. 699, 76 So. 997 (1917). This rule was well established in Alabama long before it was first codified in Ala. Code 1907, § 2451. In Foster v. Napier, 73 Ala. 595 (1883), for example, this Court explained:

1121140

> > > "'"The doctrine is thus stated in 1 Bac. Ab. 28, M.: 'The law abhors multiplicity of actions; and, therefore, whenever it appears on record, that the plaintiff has sued out two writs against the same defendant, for the same thing, the second writ shall abate; for if it were allowed that a man should be twice arrested, or twice attached by his goods for the same thing, by the same reason he might suffer in infinitum; ... if there was a writ in being at the time of suing out the second, it is plain the second was vexatious and ill ab initio.'"
> >
> > "'Foster v. Napier, 73 Ala. 595, 603 (1883) (quoting 1 M. Bacon, A New Abridgment of the Law 28 (1843)). In fact, the rule was well established as early as 1461, for it was thoroughly discussed and applied in Y.B. 39 Henry VI, pl. 12 (1461), case quoted in toto, Commonwealth v. Churchill, 5 Mass. 174 (1809); see also Sparry's Case, 5 Coke 61a., 77 Eng. Rep. 148 (K.B. 1591).'"

Ex parte J.E. Estes Wood Co., 42 So. 3d at 108-09 (quoting Ex parte State Mut. Ins. Co., 715 So. 2d 207, 213 (Ala. 1997) (emphasis omitted)).

The Court also explained in Ex parte J.E. Estes Wood Co. that

> "the principle codified by the statute 'is founded upon the policy of discouraging a multiplicity of

10

suits -- of protecting the defendant from
oppression, [and] from the grievance of double
vexation for the same cause or thing.' Foster v.
Napier, 73 Ala. 595, 606 (1883). '[W]hen a
defendant is twice impleaded by the same plaintiff,
for the same thing, the oppression and vexation is
not matter of fact; it is a conclusion of law, and
is not dependent upon an inquiry into the actual
circumstances of the two cases.' 73 Ala. at 603."

42 So. 3d at 111.

Sundy's argument that the abatement statute warrants dismissal of FCT's third-party complaint in the Jefferson Circuit Court action is misplaced. As noted, the plaintiffs in the federal action and in the State action are different. Each plaintiff is the "'master of [its own] complaint.'" Ex parte J.E. Estes Wood Co., 42 So. 3d at 111 (quoting Noland Health Servs., Inc. v. Wright, 971 So. 2d 681, 693 (Ala. 2007)). Each asserts its own separate and distinct claims against FCT. In each of those actions, the third-party plaintiff, FCT, is authorized by Rule 14(a) to expand the action by way of a third-party claim, but only to the limited extent of seeking recovery against a third-party defendant "for all or part of the plaintiff's claim against the third-party plaintiff." Rule 14(a) (emphasis added). That is, FCT could not seek to recover from Sundy in the State action

1121140

(initiated by API Holdings for the purpose of vindicating its rights and recovering its losses) losses for which FCT might potentially be held responsible in the federal action (initiated by APC for the purpose of vindicating its rights and recovering its losses). See, e.g., City of Orange Beach v. Scottsdale Ins. Co., 166 F.R.D. 506, 510 (S.D. Ala. 1996), aff'd, 113 F.3d 1251 (11th Cir. 1997) ("'Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim.' United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir.), cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987)."); 3 James Wm. Moore, Moore's Federal Practice § 14.07 (2d ed. 1995) ("Thus, an impleader claim cannot assert any and all rights to recovery arising from the same transaction or occurrence as the underlying action." (as quoted in 2 Law & Prac. of Ins. Coverage Litg. § 15:30 note 5 (June 2014))).

FCT is, itself, subject to suit by two different primary plaintiffs -- API Holdings and APC -- in two different lawsuits. Just as FCT may be held to account in two separate actions by two separate plaintiffs, it may seek separate

recoveries against a third party in relation to the different claims and losses it faces in each of those lawsuits.

## IV. Conclusion

FCT's third-party claims against Sundy in the State action are not barred by the abatement statute. The Jefferson Circuit court properly declined to dismiss those claims. Therefore, we deny the petition for a writ of mandamus.

PETITION DENIED.

Moore, C.J., and Bolin, Main, and Bryan, JJ., concur.